# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

HAI WAKNINE,
          *Defendant-Appellant.*

No. 06-50521

D.C. No.
CR-04-00373-R

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

HAI WAKNINE,
          *Defendant-Appellant.*

No. 06-50713

D.C. No.
CR-04-00373-R-1

OPINION

Appeals from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
March 3, 2008—Pasadena, California

Filed September 10, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould;
Partial Concurrence and Partial Dissent by Judge Ikuta

12551

**COUNSEL**

Ronald Richards, Beverly Hills, California, David Kenner, Encino, California, for the defendant-appellant.

George S. Cardona, United States Attorney, Thomas P. O'Brien, Assistant United States Attorney, Chief, Criminal Division, Patrick W. McLaughlin, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

GOULD, Circuit Judge:

Hai Waknine appeals his sentence of 121 months of imprisonment and $646,000 in restitution payments imposed by the district court after he pleaded guilty to one count of racketeer influenced and corrupt organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d), for laundering proceeds by embezzling from the Tel Aviv Trade Bank and brokering loans through extortion. He argues that (1) the government violated the plea agreement by not orally recommending at the sentencing hearing a 108-month prison term pursuant to the plea agreement, (2) the district court violated Rule 32 of the Federal Rules of Criminal Procedure by not giving the government an opportunity to speak at the sentencing hearing, (3) the district court committed procedural error by not considering the 18 U.S.C. § 3553(a) factors before imposing his sentence, and (4) the district court erred in its restitution calculation. Waknine also asks us to remand this case to a different district judge. We have jurisdiction under 28 U.S.C. § 1291. We conclude that there was plain error in the sentencing, and we therefore vacate the sentence, and remand with instructions for the district court properly to calculate the United States Sentencing Guidelines range, to discuss the 18 U.S.C. § 3553(a) factors in rendering sentence, and to comply

with Rule 32 of the Federal Rules of Criminal Procedure by permitting each party to be heard before announcing the sentence. We also vacate the district court's restitution order, and remand for recalculation and explanation of restitution payments. Finally, we reject Waknine's request for a new sentencing judge.

**I**

On December 7, 2004, Waknine was indicted on 46 counts, charging him, among other things, with participation in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Waknine at first pleaded not guilty and his case went to trial. On June 13, 2006, after five days of trial, Waknine entered a guilty plea to one count of RICO conspiracy, pursuant to a plea agreement. The plea agreement included a sentencing agreement that explicitly said, "At the time of sentencing, the government agrees to recommend that defendant be sentenced to a 108-month term of imprisonment."

The Presentence Investigation Report ("PSR") calculated a total offense level of 31 and Waknine's criminal history category at II. The PSR therefore recommended a United States Sentencing Guidelines ("Guidelines") range of 121 to 151 months of imprisonment. The PSR also stated that Waknine and the government agreed that he should receive a sentence of 108 months of imprisonment.

On September 7, 2006, Waknine filed his specific objections to the PSR. Among his objections, Waknine argued that the district court should lower his criminal history category from II to I. Waknine argued that several of his predicate convictions were not properly considered for purposes of his criminal history score because they were committed outside the applicable time period and because there was no evidence that he waived his right to counsel. *See* U.S.S.G. § 4A1.2(e).

Also on September 7, 2006, four days before the sentencing hearing, the government filed its sentencing memorandum

and explicitly recommended that the district court impose a 108-month term of imprisonment. At the sentencing hearing on September 11, 2006, the district court invited Waknine's counsel to make a statement on the record and permitted Waknine to allocute. However, without permitting the government any opportunity to speak before imposing sentence, the district court pronounced Waknine's sentence of 121 months of imprisonment. Soon thereafter, the government sought clarification from the district court, reminding the district court that it had recommended a 108-month term of imprisonment in its sentencing memorandum and inquiring as to how the court arrived at the 121-month sentence. The district court responded, "It would be on a criminal history category I, 121 months, which is the mid of the range."

In a subsequent hearing on December 11, 2006, the district court considered the restitution claims submitted by the government. The government requested that Waknine pay restitution to victims Eliyahu Hadad and Viken Keuylian. In May 2002, Hadad, a real estate investor in Miami, received loans from Waknine and his co-conspirators. In April 2003, Waknine and his co-conspirators met with Hadad in Florida, threatened physical injury to Hadad if he failed to repay the loan, and brought him to Waknine's lawyer who drafted and executed a mortgage note obligating Hadad to pay $336,000 if the debt was paid by September 25, 2003, and $500,000 if the debt was paid after that date. Because of the inconsistencies in Hadad's testimony and his statements in his victim loss summary, and the conflicting testimony of cooperating witnesses, the government could not discern the actual amount loaned to Hadad.[1] Therefore, the government requested that Hadad receive $131,000 in restitution: $100,000 in attorneys' fees, $25,000 in interest on a mortgage taken out by Hadad to repay the loan he received from Waknine and his co-conspirators, and $6000 in travel costs incurred from partici-

---

[1]The government could only estimate that the total amount loaned to Hadad fell somewhere between $250,000 and $595,000.

pating in Waknine's investigation and prosecution. At the restitution hearing, the district court ordered Waknine to pay Hadad $371,000 in restitution. To arrive at this number, the district court added the $131,000 requested by the government to the difference the district court calculated between the amount of money the district court determined Hadad repaid to the co-conspirators, $580,000, and the amount he was loaned, which the district court determined was $345,000. The district court provided no explanation for how it arrived at these figures.

Keuylian, the owner of a Lamborghini dealership in Beverly Hills, became involved with Waknine and his co-conspirators after he told Waknine he was looking for investors to provide funds for the purchase of high-end vehicles. Keuylian planned to purchase vehicles in Europe, convert them to United States specifications, and split the profits with the investors at the time of the sale. On behalf of the co-conspirators, Waknine wired $450,000 to Keuylian. In March 2003, Waknine and his co-conspirators visited Keuylian at his car dealership to demand immediate repayment of the loan. Waknine later left several threatening voicemail messages on Keuylian's cell phone, once threatening to take $2 million from Keuylian if he failed to repay the loan. Keuylian spent money providing and repairing vehicles for Waknine and his co-conspirators, including providing Waknine with a $175,000 Ferrari 360. Finally, Keuylian transferred $698,000 to Waknine's attorney's client trust account to pay off his debt. The government requested that Waknine pay restitution to Keuylian in the amount of $275,000: $250,000 in attorneys' fees and $25,000 in investigator's fees. At the restitution hearing, the district court ordered Waknine to pay Keuylian $275,000 in restitution.

Waknine timely filed a notice of appeal, challenging his sentence and the district court's restitution order.

## II

Waknine challenges his 121-month sentence on three grounds. Waknine did not raise these objections to his sentence before the district court, and thus we review each claim for plain error. *See United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc). "Plain error is '(1) error, (2) that is plain, and (3) that affects substantial rights.' " *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)). If these three conditions are met, we may then exercise our discretion to grant relief if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Cotton*, 535 U.S. at 631); *see also United States v. Olano*, 507 U.S. 725, 732 (1993).

## A

Waknine contends that the government violated the plea agreement because it did not recommend at the sentencing hearing, before the district court imposed the 121-month sentence, that the district court sentence Waknine to 108 months of imprisonment.[2]

**[1]** "In interpreting plea agreements, the government is to be held to the literal terms of the agreement, and ordinarily must bear responsibility for any lack of clarity." *United States v. Baker*, 25 F.3d 1452, 1458 (9th Cir. 1994) (internal quotation marks omitted). "To decide whether a plea agreement has been breached, this court considers what the defendant reasonably understood when he pled guilty." *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988).

Waknine's claim centers on the construction and applica-

---

[2]At the sentencing hearing, Waknine did not claim that the government breached the plea agreement. Thus, Waknine did not preserve this issue for appeal and we review the claim for plain error. *United States v. Cannel*, 517 F.3d 1172, 1175-76 (9th Cir. 2008).

tion of the following term of the plea agreement: "At the time of sentencing, the government agrees to recommend that defendant be sentenced to a 108-month term of imprisonment." Notably, four days before the sentencing hearing, the government filed a sentencing memorandum in which it expressly recommended "that defendant Hai Waknine be sentenced to nine years imprisonment." If this written recommendation satisfies the contractual obligation, as the government argues, then there was no breach. Waknine argues, to the contrary, that the plea agreement required that the government recommend a 108-month sentence at the sentencing hearing, before the district court imposed a sentence. If we adopt Waknine's interpretation of the plea agreement, then there was a breach because at the sentencing hearing the district court announced Waknine's sentence without first hearing from the government. The district court only heard from the government after it imposed Waknine's sentence, at which time the government reminded the district court that it "had recommended a nine-year sentence in this case."

**[2]** Waknine argues that the pre-hearing sentencing memorandum and the post-sentencing recommendation at the hearing were insufficient to satisfy the government's obligation under the plea agreement to recommend "at the time of sentencing" a 108-month prison term. He asserts that the plea agreement required the government orally to recommend the 108-month prison term at the sentencing hearing before the district court sentenced Waknine. The government, on the other hand, contends that it fulfilled its obligations under the plea agreement by recommending a nine-year (108-month) prison term in its sentencing position memorandum, and by reminding the district court of that recommendation post-sentencing. This issue of contract interpretation on the plea agreement turns on whether the phrase "at the time of sentencing" refers to the sentencing hearing alone, or whether it also includes the days preceding the hearing, during which parties file sentencing position memoranda.

**[3]** Ordinarily, we construe an ambiguity in a plea agreement in favor of the defendant. *See United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000). Here, however, Waknine did not preserve his claim of alleged plea agreement breach in the district court. Both Waknine and the government present plausible constructions of the disputed phrase—"at the time of sentencing." We conclude that the phrase in the plea agreement is ambiguous. It follows that the alleged error is neither clear nor obvious, and hence does not qualify as plain error. *See Olano*, 507 U.S. at 734. We hold that the government's alleged error does not permit relief under the "plain error" standard.

Moreover, there is no prejudice, no showing that substantial rights were violated, so Waknine's theory also fails on the third prong of plain error review. *See Ameline*, 409 F.3d at 1078 ("He must establish 'that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.' " (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). Because the district court was advised of the government's position in the sentencing memorandum and almost immediately after the announced sentence, Waknine has not met his burden of showing that the government's voicing of its known position at the hearing before sentence was announced would have led the district court to reach a different conclusion.

**B**

**[4]** Waknine also argues for the first time on appeal that the district court violated Rule 32(i)(4)(A)(iii) of the Federal Rules of Criminal Procedure by not giving the government an opportunity to speak before imposing a sentence. Rule 32, in pertinent part, provides that before imposing sentence the court must "provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney." Fed. R. Crim. P. 32(i)(4)(A)(iii); *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) ("The par-

ties must be given a chance to argue for a sentence they believe is appropriate.").

**[5]** As we see it, the district court disregarded the express command of Rule 32 when it announced Waknine's sentence before the government had spoken at the hearing. Possibly this might be viewed as inconsequential if we considered the government's sentencing memorandum to be a statement at the time of the hearing. However, the plain language of Rule 32 appears to contemplate that the government, like the defendant, will have an opportunity for a speaking role at the sentencing hearing before the district court has made a decision on the sentence. This is what we consider to be the normal reading of Rule 32, which here establishes what the court must do before imposing sentence and which provides that the opportunity of the government to speak shall be "equivalent to that of the defendant's attorney." Thus, it cannot make sense under this rule to have the defendant speak and then the court announce its sentence without letting the government speak responsively. The district court, therefore, plainly erred when it permitted Waknine and his counsel to speak but did not give the government an opportunity to speak before imposing a sentence of 121 months of imprisonment. *See Ameline*, 409 F.3d at 1078.

However, under the third prong of plain error review, we must examine whether the district court's error affected Waknine's substantial rights. *Id.*; *see also United States v. Dallman*, ___ F.3d ___, No. 05-30349, 2008 WL 2736010, at *5-6 (9th Cir. July 15, 2008). Waknine "bears the burden of persuading us that his substantial rights were affected." *Ameline*, 409 F.3d at 1078. He must establish that the probability of a different sentence " 'is sufficient to undermine confidence in the outcome of the proceeding.' " *Id.* (quoting *Dominguez Benitez*, 542 U.S. at 83).

**[6]** Where a district court denies a defendant the opportunity to allocute before sentencing, we have found nonharm-

less error that affected the defendant's substantial rights. *See United States v. Medrano*, 5 F.3d 1214, 1219 (9th Cir. 1993). Waknine does not allege such an error, however, because the district court gave Waknine an opportunity to speak at the sentencing hearing, and Waknine used that opportunity to request a lenient sentence. Instead, Waknine argues that his rights were affected when the district court did not give the government an opportunity to speak before sentencing. Waknine fails to persuade us. The government recommended a 108-month prison term in the sentencing memorandum it submitted to the district court four days before the sentencing hearing and referred the district court to that recommendation shortly after the district court imposed Waknine's 121-month sentence. Moreover, the district court's reference to criminal history category I supports the inference that the court had familiarized itself with the parties' filings.[3] Given that the 108-month recommendation was before the district court in the government's sentencing memorandum and was brought to the district court's attention shortly after the announced sentence, Waknine has not demonstrated that the government's oral recommendation at the hearing before sentencing would have changed the district court's conclusion as to the appropriate prison term. Reviewing for plain error, we hold that the district court's Rule 32(i)(4) error is not grounds for vacating the sentence.

## C

**[7]** Finally, Waknine argues that the district court erred by not considering the 18 U.S.C. § 3553(a) ("§ 3553(a)") sen-

---

[3]To the extent that Waknine is contending that the district court violated Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure, we conclude that the district court did not plainly err by resolving Waknine's factual objection to his criminal history category after the imposition of sentence. Given that the district court resolved this factual dispute in Waknine's favor (by applying a criminal history category I instead of criminal history category II), any error did not affect Waknine's substantial rights. *See Ameline*, 409 F.3d at 1078.

tencing factors before imposing a sentence of 121 months of imprisonment.[4] In light of *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 596-97 (2007), the district court plainly erred by not considering any of the § 3553(a) sentencing factors. *See Ameline*, 409 F.3d at 1078 (noting that "[a]n error is plain if it is contrary to the law at the time of appeal" (internal quotation marks omitted)). The district court's error here was patent insofar as the district court gave no reasons in reference to the § 3553(a) factors before imposing the sentence. We note that the district court, on the government's query after sentencing, said that it was sentencing at the mid-point of the Guidelines range, viewing the criminal history as I, so the district court's basic reasoning is known to us. However, there was no contemporaneous announcement of the calculated Guidelines range or satisfaction of the requirement that the sentence be reconciled for reasonableness in light of the § 3553(a) factors. This leaves us with an uncertain application of the plain error standard. It is clear that the district court's approach to sentencing in this case was plain error, as the Supreme Court in *Gall* has made clear that the Guidelines should be calculated as a starting point and that the district court should consider the § 3553(a) factors in reaching a reasonable sentence, viewing the Guidelines range as discretionary. *Gall*, ___ U.S. at ___, 128 S. Ct. at 596-97; *see also* Carty, 520 F.3d at 991. However, in this case, the district court sentenced Waknine in 2006 before having the benefit of both the Supreme Court's decision in *Gall* and our follow-on decision in *Carty*. From that standpoint, a sensible argument can be made that we should vacate and remand for the district court to resentence in the light of those precedents. That would surely be correct if there had been objection to the sentencing procedure, but the answer is not entirely clear on plain error review.

---

[4]Under our precedent in *United States v. Knows His Gun*, 438 F.3d 913 (9th Cir. 2006), *cert. denied*, 547 U.S. 1214 (2006), where a defendant does not object at sentencing to the district court's failure to sufficiently address and apply the § 3553(a) factors, we review such a claim on appeal for plain error. *Id.* at 918.

**[8]** Although we see plain error, the issue remains as to whether Waknine has demonstrated a reasonable probability that he would have received a different sentence if the district court had expressly considered the § 3553(a) factors. *See Ameline*, 409 F.3d at 1078 ("He must establish 'that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'" (quoting *Dominguez Benitez*, 542 U.S. at 83)); *see also Olano*, 507 U.S. at 734 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."). Although it is a close question whether Waknine can satisfy the third prong of the plain error test, we conclude that the district court's total failure to announce its calculated Guidelines range to the parties and to consider expressly the § 3553(a) factors is such a serious departure from established procedures that we will not reject the appeal because of the prejudice prong of plain error review. When combined with the district court's violation of Rule 32, the district court's complete failure to abide by the required sentencing procedures is sufficient to support the inference "that the error must have affected the outcome of the district court proceedings." *Cotton*, 535 U.S. at 632 (internal quotation marks omitted). Given the flagrant nature of the district court's error, which in our judgment "seriously affect[s] the . . . public reputation of judicial proceedings," *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted) (alteration in original), we exercise our discretion to notice the forfeited error, vacate Waknine's sentence, and remand for resentencing. We trust that at resentencing, the district court, being fully advised, will announce the correctly-calculated Guidelines range, will discuss the § 3553(a) factors that render a sentence reasonable, and will be certain to let the parties speak, as required by Rule 32, before announcing a sentence.

## III

Waknine also challenges the district court's restitution order on three grounds. Waknine raised these issues before

the district court, and so the "restitution order is reviewed for an abuse of discretion, provided it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution is reviewed de novo." *United States v. Gordon*, 393 F.3d 1044, 1051 (9th Cir. 2004) (quoting *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir. 1998)).

**[9]** The Mandatory Victims Restitution Act ("MVRA") requires mandatory restitution for crimes of violence and property offenses. 18 U.S.C. § 3663A. Because Waknine pleaded guilty to a RICO offense, which is characterized as a violent offense under 18 U.S.C. § 16, he must pay restitution to any person "directly and proximately harmed as a result of the commission of [the] offense." 18 U.S.C. § 3663A(a)(2). The district court ordered that Waknine pay restitution to Eliyahu Hadad in the amount of $371,000 and Viken Keuylian in the amount of $275,000. Waknine challenges this order by arguing that (1) the district court erred in its restitution calculation by utilizing figures not advocated by the government nor supported by the facts in evidence; (2) the government failed to establish by a preponderance of the evidence the restitution claimants' entitlement to the amounts awarded; and (3) the district court improperly awarded the restitution claimants travel expenses and investigation costs. We conclude that the district court erred in calculating the amount Waknine owed in restitution, that the government did not establish by a preponderance of the evidence the amount of restitution owed, and that the government did not demonstrate by a preponderance of the evidence that the investigation costs incurred by the victims were a direct result of Waknine's RICO offense conduct.

## A

**[10]** First, Waknine argues that the district court erred in calculating the amount of restitution Waknine was required to pay to Hadad. We agree. At the restitution hearing, while

attempting to determine the amount of money Hadad lost on his loan with Waknine, the district court stated, "It should be the difference between $345,000 that he got and 580 that he had to pay back. The difference is 240,000 . . ." The difference between $580,000 and $345,000 is $235,000. The district court thus clearly erred by including an additional $5000 in Waknine's restitution order.

**B**

Next, Waknine argues that the government failed to establish by a preponderance of the evidence the restitution claimants' entitlement to the amounts awarded by the district court. After reviewing the record, we conclude that the district court gave an inadequate explanation as to how it determined Hadad's award amount and insufficient reasoning as to why it accepted the nonitemized victim affidavits without requiring evidence or proof that all costs incurred were directly related to Waknine's convictions. *See United States v. Menza*, 137 F.3d 533, 538 (7th Cir. 1998).

**[11]** Under 18 U.S.C. § 3664 ("§ 3664"), a dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence. 18 U.S.C. § 3664(e); *see also United States v. Clayton*, 108 F.3d 1114, 1118 (9th Cir. 1997). The government bears the burden of proving that a person or entity is a victim for purposes of restitution, *Baker*, 25 F.3d at 1455, and of proving the amount of the loss, 18 U.S.C. § 3664(e). The district court is not required to make explicit findings to justify its restitution order, but "may refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for proposed findings of fact." 18 U.S.C. § 3664(d)(6). We conclude that § 3664 recognizes that specific findings of fact are necessary at times and contemplates that the district court will set forth an explanation of its reasoning, supported by the record, when a dispute arises as to the proper amount of restitution. *See Menza*, 137 F.3d at 538.

Because the government could not ascertain the amount of money Hadad lost to the RICO conspiracy, it only requested that the district court award $131,000 in restitution to Hadad —$100,000 in attorneys' fees, $25,000 of interest on a mortgage taken out by Hadad to pay off the loan that was the subject of Waknine's offense conduct, and $6000 in travel costs to participate in the investigation and prosecution of Waknine. In his victim loss summary, Hadad claimed that he had borrowed $250,000 from the conspirators and that he had been forced to repay $580,000. However, at Waknine's trial (before Waknine pleaded guilty), Hadad testified that he had paid Waknine $591,000 based upon his earlier receipt of a $325,000 loan. Cooperating conspirator Atia testified at Waknine's trial that Hadad received $450,000, while cooperating conspirator Benharosh testified that Hadad received a total of $595,000. As a result of the conflicting testimony, the government concluded that the amount of money Waknine loaned to Hadad "remain[ed] unclear, falling somewhere between $250,000 and $595,000," and did not request restitution for the amount Hadad paid the conspirators.

[12] Nevertheless, the district court ordered that Waknine pay $371,000 in restitution to Hadad. To arrive at $371,000, the district court added the $131,000 in non-loan losses requested by the government at the restitution hearing to the difference it concluded existed between the loan Hadad received from the conspirators, $345,000, and the amount of money he paid back to the conspirators, $580,000.[5] The district court did not explain how it arrived at these loan figures. No combination of figures supplied by Hadad or the other witnesses in this case could combine to total $345,000. In the absence of an explanation of the award by the district court, and because of the conflicting testimony regarding the amount

---

[5]As we discussed in part III.A, the district court clearly erred in calculating the total amount of restitution, and the total amount of restitution based on the district court's stated numbers should have been $366,000, not $371,000. *See supra* at pt. III.A.

of the original loan and Hadad's own inconsistent statements regarding the amount he repaid the conspirators, we are unable to determine if the district court abused its discretion in awarding restitution to Hadad in the amount of $371,000. On remand, the district court must provide an explanation of any restitution awarded to Hadad for the losses he incurred as a result of his loan with the conspirators.

**[13]** With regard to Hadad's request for $25,000 for the interest he had to pay to take a second mortgage on his house, Hadad's $100,000 in attorneys' fees, Hadad's $6000 in travel costs, Keuylian's $250,000 in attorneys' fees, and Keuylian's $25,000 in investigator's fees, the only items of evidence provided by the government to support these restitution claims were the loss summaries prepared by each victim and submitted to the court. The summaries only listed the loss claimed, e.g., "Joe Cavallo—Attorney at Law," and the amount of the loss, e.g., "$250,000." These loss summaries did not contain itemized lists indicating, for example, the time spent by the attorney, the activities engaged in by the attorney, and the attorney's credentials and billable rate. Nor did the government present supporting documentation to prove by a preponderance of the evidence that Hadad had taken out a second mortgage on his house, or that he had traveled to Los Angeles from Miami and incurred $6000 in travel expenses.

**[14]** In light of "the remedial purposes underlying the MVRA," our precedent grants "district courts a degree of flexibility in accounting for a victim's complete losses." *See Gordon*, 393 F.3d at 1053. Despite this flexibility, § 3664 minimally requires that facts be established by a preponderance of the evidence, and "the district court [may] utilize only evidence that possesses 'sufficient indicia of reliability to support its probable accuracy.' " *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1148-49 (9th Cir. 1999) (vacating a sentence and remanding, holding that "the district court had . . . an independent obligation to ensure that the sentence was supported by sufficient, reliable evidence"); *see also United*

*States v. Brock-Davis*, 504 F.3d 991, 1002 (9th Cir. 2007) ("[T]he government must provide the district court with more than just . . . general invoices . . . ostensibly identifying the amount of their losses." (quoting *Menza*, 137 F.3d at 539)). Here, in light of Waknine's challenge to the victim affidavits, the government offered insufficient evidence to prove that it is more likely than not that the victims lost the amounts listed in their loss summaries. At the restitution hearing, Waknine argued that Hadad and Keuylian incurred a portion of their attorneys' fees and investigation costs due to their suspected involvement in the conspiracy. Although the government concedes that Hadad initially had been a target of the RICO conspiracy investigation, the district court awarded restitution of the attorneys' fees and investigation costs without requiring the government to present additional evidence, beyond the victim loss summaries, detailing the legal and investigative services received by Hadad and Keuylian. We hold that in this case the district court erred by relying exclusively on the one-page loss summaries provided by the victims and in not requiring more detailed explanations of the losses each victim suffered.

**[15]** The dissent characterizes our holding today as concluding that victim affidavits in general provide insufficient indicia of reliability to support a restitution order. To the contrary, victim affidavits will generally provide sufficient, reliable evidence to support a restitution order. In this case, however, the affidavits were too summary and too conclusory to be sufficiently reliable in the face of Waknine's objections. It is unreasonable to expect a defendant to be able to counter evidence provided by the victim concerning attorneys' fees. Rather, it is the responsibility of the government, aided by the victim, to provide adequate reliable evidence. *See* 18 U.S.C. § 3664(d)(6). And, it is the responsibility of the district court to resolve a dispute as to the proper amount of restitution by a preponderance of the evidence, or to refer the issue to a magistrate judge for proposed findings of fact. *See id.* § 3664(d)(6) & (e). A sufficiently detailed affidavit doubtless

would suffice in most cases, but we remain of the view that what was done here was too conclusory. Because the district court did not ensure that the restitution order was supported by sufficient, reliable evidence, on remand the district court may only award restitution for attorneys' fees, investigation costs, travel expenses, and mortgage payments if the government provides sufficiently detailed evidence that Hadad and Keuylian incurred those costs as a direct result of Waknine's RICO offense conduct.

## C

Finally, Waknine contends that the district court improperly awarded to the restitution claimants their travel expenses and investigation costs. He argues that the attorneys' fees incurred by Hadad and Keuylian, the investigator's fees incurred by Keuylian, and the travel expenses incurred by Hadad are too indirectly related to the offense conduct to be reimbursed under 18 U.S.C. § 3663A ("§ 3663A").

With regard to Hadad's travel expenses, the plain language of 18 U.S.C. § 3663A(b)(4) directs the sentencing court to include in the restitution order reimbursement for "transportation, and other expenses incurred [by the victim] during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." If, on remand, the government proves by a preponderance of the evidence that Hadad incurred $6000 in travel expenses to assist in the investigation and prosecution of Waknine, then the district court may award restitution in that amount to Hadad.

As to the attorneys' fees and investigation costs, "[g]enerally, investigation costs—including attorneys' fees—incurred by private parties as a 'direct and foreseeable result' of the defendant's wrongful conduct 'may be recoverable.'" *Gordon*, 393 F.3d at 1057 (quoting *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004)). We have affirmed restitu-

tion orders for attorneys' fees where the fees "were *directly*, not tangentially, related to" the offense conduct. *United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004) (affirming restitution order for insurance company's attorneys' fees in a civil action to rescind the insurance contract where defendant attempted to collect on an insurance policy after illegally sinking the insured boat and was later indicted for perjury committed in the civil suit); *see also United States v. Cummings*, 281 F.3d 1046, 1052-53 (9th Cir. 2002) (affirming restitution order of attorneys' fees incurred by wife's attempt in separate civil proceedings to regain custody of her children because the fees were "a direct and foreseeable result" and "[t]here would have been no need to engage in civil proceedings to recover the children if [husband] had not unlawfully taken them to Germany").

In *Gordon*, where an employee of Cisco embezzled millions of dollars in cash and stocks, we held that the district court "reasonably concluded that Cisco's investigation costs, including attorneys' fees, were necessarily incurred by Cisco in aid of the proceedings." 393 F.3d at 1057 (explaining that Cisco had to respond to five grand jury subpoenas and a number of government requests that required it to analyze vast amounts of documentation, including every item regarding its investments in more than 60 companies that were Gordon's possible targets). However, there are differences between the investigation costs incurred by Cisco in *Gordon* and the investigation costs incurred by the victims here. Unlike the attorneys' fees in *Gordon*, which were incurred exclusively from the document review required to track the fraud, *see id.*, the attorneys' fees incurred by Hadad and Keuylian were in part, if not entirely, incurred to protect themselves from prosecution.[6] In *Gordon*, the complex investigation required to

---

[6]Hadad first hired an attorney because he was initially a suspect in the government's investigation. Because of the lack of information provided by Keuylian in his request for restitution, it is unclear when he first hired an attorney and why.

uncover the extent of Gordon's fraud was documented in detail and thoroughly reviewed by the district court. *Id.* Here, no evidence was presented by the government to demonstrate that it was reasonably necessary for Hadad or Keuylian to incur attorneys' and investigator's fees to participate in the investigation or prosecution of the offense.

**[16]** The lack of detailed documentation to support the restitution claims of Hadad and Keuylian prevented the district court from thoroughly reviewing the alleged losses and determining whether they were "necessarily incurred . . . in aid of the proceedings." *See Gordon*, 393 F.3d at 1057 (concluding that the "district court carefully analyzed Cisco's [restitution] requests" because the district court reduced the loss amount based on its determination that the evidence "does not support fully the extraordinary expense associated with Cisco's attempt to recover data from Defendant's laptop computer"). Without more detailed evidence as to the type of attorneys' and investigator's fees incurred and the extent that these fees were incurred to aid in the prosecution of Waknine, we cannot determine whether the district court abused its discretion in awarding restitution based on those costs under § 3663A. On remand, the district court may only award restitution of travel expenses and investigation costs, including attorneys' fees, if the government provides sufficiently detailed evidence to demonstrate by a preponderance of the evidence that these costs were incurred by Hadad and Keuylian in aid of Waknine's investigation or prosecution, and that such expenses and costs were reasonably necessary.

## IV

Finally, complaining about the sentencing errors, Waknine requests that his case be remanded to a different judge. Waknine further alleges that "[t]here is a generalized pattern of cowering by attorneys who appear" before Judge Real and a general pattern of parties afraid to advocate in Judge Real's courtroom. By contrast, Waknine does not allege that Judge

Real exhibited any bias for or against either of the parties in this case.

We stand by our general rule: "Absent unusual circumstances, resentencing is to be done by the original sentencing judge." *United States v. Sharp*, 941 F.2d 811, 817 (9th Cir. 1991), *superseded in part on other grounds*, 18 U.S.C. § 3663, *as recognized in United States v. Jackson*, 982 F.2d 1279, 1282 n.1 (9th Cir. 1992). When there are no allegations of bias, we consider the following factors in deciding whether "unusual circumstances" exist such that remand to a different judge is appropriate:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. The first two factors are of equal importance, and a finding of either one would support remand to a different judge.

*United States v. Working*, 287 F.3d 801, 809 (9th Cir. 2002) (citations and internal quotation marks omitted).

**[17]** The district court's procedural errors in other cases do not demonstrate that in this particular case it will have "substantial difficulty in putting out of [its] . . . mind previously-expressed views or findings determined [by us] to be erroneous." *See id.* at 809-10. Moreover, Waknine's contention that attorneys "cower" before Judge Real is not supported by the record in this case. We note that neither Waknine's attorney nor the government's attorney faltered in the least bit in their arguments or retreated from their positions at the sentencing

and restitution hearings. We are confident that in future proceedings counsel will not hesitate to advocate before the district court. We reject Waknine's request for a change of judge, and remand this case for further consideration and proceedings consistent with this opinion.

**CONVICTION AFFIRMED; SENTENCE VACATED; RESTITUTION ORDER VACATED; REMANDED.**

IKUTA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Waknine's sentence should be vacated and the case should be remanded for resentencing. I further concur in the majority's decision not to reassign this case to a different judge on remand. On the restitution issue, I agree with the majority that the district court clearly erred in its factual analysis of the loan amounts submitted as part of Hadad's restitution claim, which resulted in the district court's order that Waknine pay $371,000 in restitution to Hadad. I agree with the majority that Hadad's restitution award should therefore be vacated. However, I must respectfully dissent from the remainder of the majority's restitution analysis in Section III of its opinion. Most critically, I cannot agree that "the district court erred by relying exclusively on the one-page loss summaries provided by the victims and in not requiring more detailed explanations of the losses each victim suffered." Maj. op. at 12571. There is no support for this proposition, either in the statutory framework that governs restitution or in our case law, and there is no basis for vacating the district court's factual finding in this case.

"A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution

is reviewed de novo." *United States v. Marks*, 530 F.3d 799, 811 (9th Cir. 2008) (internal quotation marks omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also United States v. Crook*, 9 F.3d 1422, 1427 (9th Cir. 1993). Under this deferential standard, "this court will not reverse if the district court's findings are plausible in light of the record viewed in its entirety . . . even if it is convinced it would have found differently." *Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1155 (9th Cir. 2007) (alteration in original) (internal quotation marks omitted).

The Mandatory Victims Restitution Act ("MVRA"), sets forth procedures for issuing restitution orders in 18 U.S.C. § 3664. *See United States v. Moreland*, 509 F.3d 1201, 1222-23 (9th Cir. 2007). Among other things, the MVRA directs the court to order the probation officer to prepare a report including "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). In collecting this information, the probation officer must "provide notice to all identified victims of . . . the opportunity of the victim to file with the probation officer a separate affidavit relating to the amount of the victim's losses subject to restitution." 18 U.S.C. § 3664(d)(2)(A)(vi). Section 3664(d)(2)(B) further directs the probation officer to "provide the victim with an affidavit form to submit pursuant to subparagraph (A)(vi)."

The structure of Section 3664 makes clear that the court may use the completed victim affidavit in determining a victim's losses. This is consistent with our precedents, which allow courts to consider and weigh the evidentiary value of witness affidavits, signed under penalty of perjury. *See, e.g.,* Fed. R. Civ. P. 56(e)(1) (first-party affidavits can serve as competent evidence to support or oppose a summary judg-

ment motion); *Williams v. Boeing Co.*, 517 F.3d 1120, 1128 (9th Cir. 2008) ("On a summary judgment motion challenging standing a plaintiff may not rest on mere allegations, but must set forth by affidavit or other evidence specific facts that demonstrate standing." (internal quotation marks omitted)). Indeed, the Fifth Circuit, addressing this issue against the backdrop of the pre-MVRA version of § 3664, held that victims' affidavits are a sufficient factual basis upon which to rest a restitution decision. *See United States v. Rochester*, 898 F.2d 971, 982 (5th Cir. 1990) (holding that an affidavit establishing the victim's loss was "sufficient to satisfy the . . . requirement for a factual basis").

Moreover, the Sentencing Guidelines contemplate that the district court will rely on witness affidavits in order to resolve factual disputes that arise as part of sentencing proceedings. Section 6A1.3(a) states:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

The commentary notes to § 6A1.3 clarify that "[w]ritten statements of counsel or affidavits of witnesses may be adequate under many circumstances." *See also United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991) (noting that under the commentary to section 6A1.3, witness affidavits may be sufficient to resolve factual disputes). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).

There is nothing in this framework that requires victims to provide a detailed itemization of their losses. There is also nothing in the governing law that requires victims to submit corroborating evidence of their claims. To the contrary, as a general rule we have expressly rejected the argument that § 6A1.3 "impose[s] any 'corroboration' requirement" on parties submitting evidence to resolve factual disputes at sentencing. *United States v. Alonso*, 48 F.3d 1536, 1546 (9th Cir. 1995). In short, because the MVRA, the Guidelines, and our case law permit a district court to rely on a victim's affidavit, and because the governing law creates no detailed itemization or corroboration requirement, the district court's reliance on the victims' affidavits in fashioning its restitution order was clearly "within the bounds of the statutory framework." *Marks*, 530 F.3d at 811 (internal quotation marks omitted).

Nor is there any basis for holding that the district court's restitution order was clearly erroneous. Here, both Hadad and Keuylian submitted form affidavits which they signed under penalty of perjury. Waknine did not submit any evidence contradicting the restitution amounts he now challenges on appeal, but merely made unsupported arguments to the district court. The district court made a factual finding as to the amount of restitution based on these victim affidavits. Because the relevant portions of the victim affidavits are uncontradicted evidence of loss, the district court's determination was based on a preponderance of the evidence. Moreover, the majority has not identified any evidence in the record that would allow it to conclude that the district court erred in calculating the amount of the restitution order, for example, by failing to consider contrary evidence or miscalculating the amount of loss.[1]

---

[1]For purposes of this analysis, I set aside the subcomponent of Hadad's affidavit that dealt with the amounts he was loaned and forced to repay. As I note above, I agree with the majority that the district court's analysis of this question was clearly erroneous.

Instead, the majority seems to harbor doubts about the victims' honesty and care in preparing the affidavits. *See* maj. op. at 12570-72 (holding that the victim affidavits were insufficient because they were not adequately detailed, were uncorroborated, and could have included non-reimbursable costs). Because of these suspicions, the majority declares that the affidavits are unreliable, and thus that the district court erred in using them to formulate the restitution order. The majority considers the absence of contrary evidence in the record to be inconsequential, because "[i]t is unreasonable to expect a defendant to be able to counter evidence provided by the victim concerning attorneys' fees." Maj. op. at 12571. But in fact, the MVRA and Guidelines address this very concern by providing procedural mechanisms for developing disputed facts. Waknine could have tested the victims' credibility and the reliability of their claims of loss by requesting an evidentiary hearing. *See* 18 U.S.C. § 3664(d)(4) (allowing the district court to receive additional documentation or hear testimony to resolve factual issues arising as part of the restitution analysis); *United States v. Gordon*, 393 F.3d 1044, 1049-50 (9th Cir. 2004) (district court conducted an evidentiary hearing to resolve disputed restitution issues); *see also* U.S.S.G. § 6A1.3 cmt. (evidentiary hearings may be held to resolve disputed factual issues at sentencing). Indeed, when the evidentiary basis of a district court's sentencing decision is of questionable reliability, it may be error for a district court to decline a defendant's request for an evidentiary hearing. *See United States v. Jiminez Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996).

But here, Waknine did not request an evidentiary hearing on the reliability of the affidavits submitted by Hadad and Keuylian. Because the defendants could have developed evidence that would contradict the victim affidavits and failed to do so, it is difficult to discern how the majority could arrive at a "definite and firm conviction that a mistake has been committed." *United States Gypsum Co.*, 333 U.S. at 395. Had the majority been reviewing the victim affidavits in the first

instance, it might well have reached a different result than the district court and rejected the affidavits as insufficiently credible. Of course, that is not an appropriate basis for reversing the district court's decision in this context. *See Katie A.*, 481 F.3d at 1155.

In reaching its conclusion, the majority principally relies on *United States v. Garcia-Sanchez*, 189 F.3d 1143 (9th Cir. 1999). This case does not support the majority's position. Although *Garcia-Sanchez* held that "in establishing the facts . . . underlying a sentence, the district court [must] utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy," *id.* at 1148 (internal quotation marks omitted), we based this holding on § 6A1.3(a) of the Sentencing Guidelines. As noted above, the commentary notes to § 6A1.3 specify that written affidavits "may be adequate under many circumstances." Thus, *Garcia-Sanchez* does not stand for the proposition that affidavits must meet some heightened standard of specificity in order to have "sufficient indicia of reliability" for purposes of sentencing and restitution proceedings.

Moreover, the facts of *Garcia-Sanchez* are considerably different from those in the present case. *Garcia-Sanchez* concerned a district court's formulation of a sentence for a defendant convicted of conspiracy to sell cocaine, not the formulation of a restitution order. We determined that, for purposes of sentencing, "[t]he district court's estimate of the conspiracy's weekly sales was not based on reliable evidence" because it was "supported only by unexplained conclusions drawn from unrevealed out-of-court statements." *Garcia-Sanchez*, 189 F.3d at 1148. Here, in contrast, the district court's restitution decision was supported by sworn affidavits from persons who had first-hand knowledge of the loss, i.e., the victims.

Nor does *United States v. Brock-Davis*, 504 F.3d 991 (9th Cir. 2007), support the majority's position. In *Brock-Davis*,

we were presented with the question whether factual discrepancies in the record required us to vacate the district court's restitution order. *Id.* at 1001-02. We declined to do so, noting that "although the government must provide the district court with more than just . . . general invoices . . . ostensibly identifying the amount of their losses, the government's burden of proof has been met," because the victim "made an overall statement of his final request's accuracy that Brock-Davis fails to discredit." *Id.* at 1002 (ellipses in original) (internal citation and quotation marks omitted). *Brock-Davis* is thus inapposite here, because the government submitted more than just "general invoices." Rather, the government submitted affidavits from the victims, which included declarations under penalty of perjury that the contents of the affidavits were true and correct. Moreover, as in *Brock-Davis*, Waknine did not introduce any evidence to discredit the accuracy of the final request for restitution submitted by the victim. *Id.* Thus, to the extent that *Brock-Davis* does apply in the present context, it weighs in favor of a conclusion that the district court's restitution decision should be partly upheld.

In sum, the majority creates a new and more onerous requirement for victim affidavits than is required by the MVRA, the Guidelines, or our case law. The rule promises to create new procedural hurdles for victims seeking restitution, a result the MVRA was designed in large part to avert. *See Moreland*, 509 F.3d at 1222-23. Given that the governing law clearly contemplates that affidavits may be competent evidence to resolve factual disputes at sentencing, I see no basis for holding that the district court abused its discretion in relying on the victims' affidavits to formulate a restitution order in this case. Therefore, I respectfully dissent in part from Section III of the majority opinion.