**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 17 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>TONY EUGENE BARNES,<br><br>Defendant - Appellant. | No. 08-30382<br><br>D.C. No. 2:08-CR-0007-DWM<br><br>MEMORANDUM [*] |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted August 3, 2009
Seattle, Washington

Before: PREGERSON, NOONAN, and BEA, Circuit Judges.

Tony Eugene Barnes ("Barnes") pleaded guilty to one count of bank fraud,

one count of conspiracy to commit bank fraud, and one count of aggravated

identity theft for stealing 31 bank account holders' identities. The district court

sentenced Barnes to two concurrent 57-month sentences and a consecutive 24-

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

month sentence. Barnes was also ordered to pay $145,703.45 in restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. Barnes challenges his 57-month concurrent sentences and the restitution order. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I.   Sentencing

The district court applied the twelve-level sentencing enhancement because it concluded that the loss arising from Barnes' offense exceeded $200,000. The district court determined that Barnes was responsible for $193,303.54 in intended losses[1] suffered by the banks, plus $12,400 in collateral losses suffered by the individual bank account holders. The district court calculated $12,400 in collateral losses by assigning $400 of collateral loss for each of the 31 individual victims. The district court based its calculation on testimony by FBI Special Agent Kevin Damuth. Agent Damuth testified regarding the time and expense typically needed to rectify identity theft, as well as the specific collateral losses suffered by six individual bank account holders.

---

[1] Under the Sentencing Guidelines, loss is calculated according to the greater of actual loss or intended loss. U.S.S.G. § 2B1.1(b)(1), cmt. n.3(A). Intended loss is the "pecuniary harm that was intended to result from the offense" and "includes intended pecuniary harm that would have been impossible or unlikely to occur." § 2B1.1(b)(1), cmt. n.3(A)(ii).

Barnes contends that there was insufficient evidence to support the district court's estimate of collateral losses. "We review the district court's determination of the amount of loss for clear error." *United States v. Santos*, 527 F.3d 1003, 1006 (9th Cir. 2008) (citing *United States v. Zolp*, 479 F.3d 715, 718 (9th Cir. 2007)). Facts at sentencing must be established by "a preponderance of the evidence." *United States v. Armstead*, 552 F.3d 769, 776 (9th Cir. 2008).[2]

In *Armstead*, we held that "[i]f a person suffered pecuniary harm beyond the amount by which the person was reimbursed, then that amount should be included in the loss calculation." *Id.* at 783. In *United States v. Pham*, we differentiated between account holders reimbursed immediately by the bank, who had not suffered any collateral loss; and account holders whose reimbursement was delayed, who may have suffered collateral loss. 545 F.3d 712, 719-21 (9th Cir. 2009). We noted that the government need not provide evidence of collateral loss

---

[2] Barnes summarily asserts that the district court should have applied the "clear and convincing evidence" standard to the facts supporting the loss calculation sentencing enhancement. If a sentencing factor has "an extremely disproportionate effect on the sentence relative to the offense of the conviction" the district court must find facts by "clear and convincing evidence." *Armstead*, 552 F.3d at 776 (quoting *United States v. Moreland*, 509 F.3d 1201, 1220 (9th Cir. 2007)). Here, the disputed loss calculation, which resulted in a two-level increase in Barnes's advisory guideline range, did not have an extremely disproportionate effect on the sentence. *See id.* at 777. Accordingly, the district court properly applied the preponderance of the evidence standard.

from every victim subject to delayed reimbursement, so long as evidence is produced from "enough of the account holders to allow the sentencing court reasonably to infer a pattern [of collateral loss]." 545 F.3d at 720 n.3.

Here, the government established by a preponderance of the evidence that the 31 individual account holders suffered an average of $400 in collateral loss. Agent Damuth testified regarding the general collateral expenses that would be incurred by all of the account holder victims, and the individual collateral expenses claimed by some of the victims. In particular, Agent Damuth testified that each of the individual account holders spent hours going to their banks, signing affidavits and fixing their accounts, and that each of the individual account holders incurred additional collateral expenses for gas and new checks. Under the Sentencing Guidelines, this testimony was sufficient to "allow the sentencing court to infer a pattern of delayed reimbursement" and reasonably estimate the average collateral loss for the individual account holders. *See Pham*, 545 F.3d at 720 n.3 (citing U.S.S.G. § 2B1.1 cmt. n.3(C)).

Accordingly, we hold that the district court's $400 per victim estimate and total loss calculation was not clearly erroneous.

## II.    Restitution

The district court's restitution order also included its calculation of $12,400 in collateral loss to the individual bank account holders. Barnes contends that there was insufficient evidence to support restitution in this amount. We review a restitution order "for an abuse of discretion, provided it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error." *United States v. Waknine*, 543 F.3d 546, 555 (9th Cir. 2008) (internal quotation marks and citations omitted). We affirm.

The MVRA requires mandatory restitution for crimes of violence and property offenses. 18 U.S.C. § 3663A. "In light of the remedial purposes underlying the MVRA, our precedent grants district courts a degree of flexibility in accounting for a victim's complete losses. Despite this flexibility, [the MVRA] minimally requires that facts be established by a preponderance of the evidence, and the district court may utilize only evidence that possesses a sufficient indicia of reliability to support its probable accuracy." *Waknine*, 543 F.3d at 557 (internal citation and quotation marks omitted).

As discussed above, the government proved by a preponderance of the evidence that the 31 account holders suffered on average $400 in collateral losses. Agent Damuth's testimony possesses a sufficient indicia of reliability because of his expertise, and because he obtained a specific accounting of the collateral losses

5

suffered by 6 of the 31 account holders.  Accordingly, the district court did not abuse its discretion in ordering Barnes to pay $12,400 in restitution to individual bank account holders.

**AFFIRMED.**