# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

MICHAEL TSOSIE,
                    *Defendant-Appellant.*

No. 10-10030

D.C. No.
3:09-cr-08022-
JAT-1

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
March 16, 2011—San Francisco, California

Filed May 10, 2011

Before: Richard A. Paez, Marsha S. Berzon, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Berzon;
Partial Concurrence and Partial Dissent by Judge Bea

## COUNSEL

Daniel L. Kaplan & Sarah Elizabeth Stone (argued), Assistant Federal Public Defenders, Phoenix, Arizona, for appellant Michael Tsosie.

Bridget S. Bade, Randall M. Howe & Joan G. Ruffennach (argued), Assistant United States Attorneys, Phoenix, Arizona, for appellee United States of America.

## OPINION

BERZON, Circuit Judge:

Michael Tsosie entered into a plea agreement with the government and pleaded guilty to one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). Pursuant to the plea agreement, the District Court sentenced Tsosie to eighteen months of imprisonment, a sentence well below the Guidelines range of 97 to 121 months. *See* Fed. R. Crim. P. 11(c)(1)(C). At the sentencing hearing, the victim's counsel urged the District Court to order Tsosie to pay $31,994 in restitution to the victim's mother to cover costs she incurred in making a series of trips between her home and the victim's boarding school, 150 miles away. The District Court ordered the restitution.

Tsosie appeals the restitution order, arguing (1) that the mother's travel expenses were not "incurred by the victim" and were therefore not subject to restitution under the applicable statute, and, in the alternative, (2) that the restitution award was issued in violation of the procedural and evidentiary requirements of 18 U.S.C. § 3664. We agree with the second but not the first of these arguments. We also hold that Tsosie has not waived his right to appeal the restitution order.

## I. BACKGROUND

Michael Tsosie is a 62-year-old Navajo resident of Northern Arizona. In October, 2006, a fourteen-year old girl reported to her school guidance counselor that Tsosie had sexually abused her when she was five or six years old. The abuse occurred within the Navajo Indian Reservation. In February, 2009, the government filed an indictment in U.S. District Court charging Tsosie with three counts of aggravated sexual abuse of a minor in violation of 18 U.S.C. § 2241(c), and two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). *See* 18 U.S.C. § 1153(a) (providing that

Indians committing certain offenses within Indian country "shall be subject to the same law and penalties" as other persons "committing . . . the. . . offense[ ] within the exclusive jurisdiction of the United States").

Tsosie agreed to plead guilty to one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1) in exchange for the government's promise to dismiss the other four counts. In the plea agreement, the parties stipulated that "an appropriate disposition of th[e] case" would be for Tsosie to "be sentenced to no more than 18 months" of imprisonment, have no contact with the victim, have no contact with any minor without the approval of a probation officer, register as a sex offender, and undergo sex offender treatment. The parties did not stipulate as to whether an order for restitution should issue. The plea agreement did state, however, under the heading "Maximum Penalties," that "the court . . . shall order the defendant to make restitution to any victim of the offense, unless, pursuant to 18 U.S.C. § 3663, the court determines that restitution would not be appropriate in the case."[1]

At the change of plea hearing, the District Court explained the penalties for a violation of 18 U.S.C. § 2244(a)(1). The Court stated, in part, that:

> [I]f any victim sustained any economic loss as a result of your crime, you'll be required to pay restitution to the victim for that loss, and if you willfully fail to pay the restitution yet have the ability to pay

---

[1]The plea agreement's reference to the District Court's discretion under 18 U.S.C. § 3663 appears erroneous. Tsosie was convicted under 18 U.S.C. § 2244(a)(1). His case was governed by the *mandatory* restitution provision codified at 18 U.S.C. § 2248. *See* 18 U.S.C. § 2248(a) ("*Notwithstanding § 3663 or 3663A*, . . . the court shall order restitution for any offense under this chapter" (emphasis added)). Because the parties have not raised this issue, we only observe that this reference to the District Court's discretion buttresses our conclusion that Tsosie's waiver of appeal was not knowing with regard to the restitution order.

some or all of it or if you fail to make bona fide efforts to find work or borrow money, your probation or supervised released could be revoked and you could be sent back to prison as a sanction to enforce collection of the restitution. Do you understand that?

Tsosie answered "yes."

The presentence report ("PSR") calculated Tsosie's Guideline range as 97 to 121 months. The PSR also stated that the victim's mother reported that the victim had suffered bouts of depression, stress, and anxiety, which the mother believed had contributed to physical problems, including gallstones. The mother requested $200 in restitution for travel expenses related to a court hearing that she and the victim attended, $1,800 for the treatment of the victim's gallstones, and $31,994 "for expenses related to her traveling to Flagstaff to visit the victim each weekend." Although the record is unclear as to the details, the victim apparently attended boarding school in Flagstaff, but she otherwise lived with her mother in Kaibeto, Arizona, approximately 150 miles away. The author of the PSR recommended awarding only the $200 in restitution, stating that she "was unable to determine that the additional $33,794 requested for medical and travel expenses was directly related to the instant offense."

Appended to the PSR was an eleven-page spreadsheet listing approximately 140 trips, most of them between Kaibeto and Flagstaff and occurring within a three-year period. Next to each trip entry was a calculation of the costs of the trips according to the Internal Revenue Service rates in effect at the time of the trip. The $31,994 in travel expenses, which the District Court ultimately awarded, are the subject of this appeal.[2]

---

[2]The District Court did not discuss the other restitution requests, and so implicitly denied them as separate expenses.

One working day before the sentencing hearing, the victim's counsel filed a declaration from Martha Scranton, the Behavioral Health Program Director for Native Americans for Community Action, stating that in February, 2006, she had prescribed a treatment plan for the victim, and that the plan required "the minor's mother travel to her daughter's dorm, [and] pick up her daughter or visit her daughter at the dorm each weekend." Scranton averred that "in [her] professional opinion, the minor crime victim needed the added emotional support of a loved family member to assist in the recovery process." This affidavit was the only sworn statement in the record.

At the sentencing hearing, the victim's counsel asked the District Court to accept the "very lenient plea agreement," but urged the Court to order Tsosie to pay the $31,944 in traveling expenses. The government, for its part, expressed some hesitation as to the appropriateness of awarding the $31,994 in restitution, but ultimately took no clear position on the matter. Tsosie's counsel opposed the victim's restitution request and also asked that, "if the Court's inclined to impose that amount of restitution, . . . a hearing be set and further documentation be provided." The Court accepted the plea agreement, sentenced Tsosie to eighteen months of imprisonment, and, without hearing any further evidence or explaining its ruling, ordered him to pay $31,944 in restitution.

## II.   WAIVER OF APPEAL

Tsosie's plea agreement contained an appeal waiver, providing, in part, that Tsosie waived "any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals)." Neither party disputes that a restitution order is a "sentence" within the meaning of the plea agreement. The government asks us to dismiss Tsosie's appeal in light of this waiver.

**[1]** We have explained that " '[a]n appeal waiver will not apply if: (1) a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11; (2) the sentencing judge informs a defendant that she retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence violates the law.' " *United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009) (quoting *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007)). We have also stated that we will not give effect to an appeal waiver if it is not "made knowingly and voluntarily." *United States v. Gordon*, 393 F.3d 1044, 1050 (9th Cir. 2004) (quotation omitted).[3]

Tsosie advances two reasons why the appeal waiver does not bar his challenge to the restitution order. First, he contends that the appeal waiver was not knowing because he was not afforded notice of the amount of restitution to be ordered. Second, he argues that the award of the victim's mother's expenses exceeded the District Court's authority under 18 U.S.C. § 2248 and so constitutes an unlawful sentence. We agree with Tsosie's first contention, and so address only it with regard to the waiver of appeal (although we later consider Tsosie's challenge to the legality of the sentence on the merits).

**[2]** *Gordon* establishes that a defendant cannot validly waive his right to appeal a restitution order if, at the time he agrees to waive the appeal, he is not given a reasonably accurate estimate of the amount of the restitution order to which he is exposed.[4] In *Gordon*, the defendant had agreed to waive

---

[3]Although Fed. R. Crim. P. 11 requires a court to inform a defendant of and "determine that a defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal," *Gordon*'s "knowing and voluntary" requirement for appellate waiver is, as will appear, not necessarily satisfied by compliance with Rule 11 alone.

[4]Because Tsosie's plea agreement provided *no* estimate of the amount of restitution to be awarded, we need not determine whether, under our precedents, a plea agreement that contained an accurate and fairly circumscribed estimate of the range of the amounts of the restitution that may be ordered would provide sufficient notice to the defendant for him knowingly to waive his appeal as to a restitution order.

"his right to appeal his 'convictions, the judgment and orders of the Court,' in addition to the right to appeal his sentence." 393 F.3d at 1049. In his plea agreement, "Gordon agreed to pay restitution totaling $14,114,372.38 to [the victim] and $343,173.40 to the government," *id.*, but "[t]he government reserved the right in the plea agreement to argue for additional restitution for [the victim corporation's] 'lost opportunity' costs for [certain embezzled] shares, investigation costs, and prejudgment interest." *Id.* Despite this reservation of rights by the government and the waiver by the defendant, we held that Gordon's plea agreement did not bar his appeal of the portions of the restitution order requiring Gordon to pay amounts not set forth in the plea agreement. *Id.* at 1050. We explained that "Gordon's plea agreement was unclear about exactly what the amount of actual damages would be for such contested issues as the embezzled . . . shares, prejudgment interest and investigation costs . . . [so] Gordon . . . did not waive his right to appeal these contested amounts." *Id.* at 1050 (quotation omitted); *see also United States v. Phillips*, 174 F.3d 1074, 1076 (9th Cir. 1999) (holding an appeal waiver ineffective because "the plea agreement [was] ambiguous regarding the amount of restitution").

**[3]** Tsosie's plea agreement did not set forth any specific amount of restitution that Tsosie could be required to pay, or even any estimate of that amount. Because the plea agreement did not set forth the amount of restitution Tsosie would be ordered to pay, or a reasonable and fairly accurate estimate thereof, Tsosie "lacked sufficient notice to waive his right to appeal the restitution award." *Gordon*, 393 F.3d at 1050.

The government maintains that *Gordon* and *Phillips* are not controlling because they involved restitution orders issued pursuant to 18 U.S.C. § 3663 and § 3663A, not § 2248, the restitution provision applicable here. In the government's view, the outcomes in those cases are explained not by general principles of when a defendant can knowingly waive appeal of a restitution order, but instead by specific provisions

in § 3663 and § 3663A requiring a defendant to have notice as to the amount of restitution to be ordered to non-victims under those statutes for the defendant to waive his appeal of the restitution order. The government maintains that, because those provisions have no analog in § 2248, the notice requirements discussed in *Gordon* and *Phillips* do not apply here.

The government misreads the statutes and our precedents. Section 3663(a)(1)(A) provides, in part, that "[t]he court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663(a)(1)(A). Section 3663A(a)(3) provides, for its part, that "[t]he court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." *Id*. § 3663A(a)(3). These provisions deal with a sentencing court's power and discretion to order restitution to non-victims, not with whether notice of the amount of restitution must be provided to waive appeal of a restitution order. As a result, these provisions may be relevant to determining whether a restitution order is an illegal sentence as to which an appeal waiver is not effective, *cf. United States v. Broughton-Jones*, 71 F.3d 1143, 1147-48 (4th Cir. 1995), but they are not helpful in determining whether the waiver itself was knowing, the issue as to which *Phillips* and, in particular, *Gordon* are dispositive in this case.[5] As to that question, there is no relevant textual difference between § 2248 and the other two restitution provisions, so the reasoning of *Phillips* and *Gordon* controls, even though restitution here was ordered pursuant to § 2248.

---

[5]*United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995), held that the appeal waiver in that case *was* knowing, before then deciding that it would consider the appeal in light of the "illegal sentence" exception to the general rule that courts enforce knowing and voluntary plea waivers. *Id.* at 1146-47. For that reason, contrary to the government's suggestion at oral argument, *Broughton-Jones* is of no help in interpreting *Gordon*'s and *Phillips*'s conclusions that the appeal waivers in those cases were not knowing.

Our cases also lend no support to the government's argument. Neither *Gordon* nor *Phillips* cites § 3663(a)(1) or § 3663A(a)(3).[6] Indeed, the portions of the restitution order appealed in *Gordon* did not even involve restitution to a nonvictim, which excludes the possibility that the relevant portion of § 3663(a)(1) or § 3663A(a)(3) somehow lurks *sub silentio* behind that case's holding, as we would be required to believe to accept the government's reading of the case.

**[4]** Although *Gordon* and *Phillips* did not explain why some precision in the plea agreement is necessary to have a knowing appeal waiver, this case illustrates one reason for the requirement. Unlike terms of imprisonment, which have statutory maximums and are meted out by judges aided by the Sentencing Guidelines, there is neither a statutory limit nor any guidelines covering the amount of restitution orders, and they may, as here, depend on a request or submission by a third party. A defendant and his attorney will frequently be unable to predict whether there will be such a request and, if so, in what amount. As a result, in many cases, a defendant will plead guilty, as Tsosie appears to have done here, believing that he will not owe any restitution, when, in fact, the sky is the only limit to his potential exposure. This possibility explains why *Gordon* and *Phillips* require a plea agreement to set forth the amount of restitution to which a defendant is exposed for the defendant to be able knowingly to waive his appeal of the restitution order.

**[5]** In sum, we conclude that Tsosie's waiver of appeal is ineffective as to the restitution order and so will consider his challenges to that order on their merits.

---

[6]*Phillips* does discuss a similar provision, § 3663(a)(3), which provides that a "court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement," 18 U.S.C. § 3663(a)(3), but does not rely on it in deciding that the appeal waiver was not knowing. *See* 174 F.3d at 1076-77.

## III.   WHETHER THE COSTS WERE INCURRED BY THE VICTIM

**[6]** "Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority." *United States v. Follet*, 269 F.3d 996, 998 (9th Cir. 2001). Title 18 U.S.C. § 2248 both empowers and requires a court to order certain sex offenders to pay "the full amount of the victim's losses." 18 U.S.C. § 2248(b)(1). "The full amount of the victim's losses" are defined as "any costs incurred by the victim" for, among other things, "necessary transportation," "medical services relating to physical, psychiatric, or psychological care," and "any other losses suffered by the victim as a proximate result of the offense." *Id.* § 2248(b)(3).

In *Follet*, this Court held that § 2248 did not authorize a court to order a defendant to pay restitution to a counseling facility that had provided free care to his victim. 269 F.3d at 1000. We explained that "[a] cost for which the victim will never have to pay because the services will be provided directly by a governmental or charitable organization is not 'incurred' by the victim, even if that organization will incur costs for the benefit of the victim." *Id.*; *see* 18 U.S.C. § 2248(b)(3) (defining the losses subject to restitution as those "costs incurred by the victim"). Tsosie argues that the victim's mother's driving expenses were likewise not "incurred by the victim," and therefore are not permitted by the statute. We cannot agree.

**[7]** Section 2248(c) defines "victim" as:

the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event

shall the defendant be named as such representative or guardian.

18 U.S.C. § 2248(c). This definition is not a model of legislative drafting. Nonetheless, it seems apparent enough that the purpose of the definition's reference to "legal guardians" is to permit restitution of costs that legal guardians of minor victims, acting in their capacity as legal guardian, incurred as a result of an offense.

**[8]** Of course, statutory text, not judicial intuitions of statutory purpose, is the starting point of statutory analysis. The text of § 2248(c) is open to at least one of two readings. On the first reading, urged by the government, the definition is something of a blunt instrument: The statute "includ[es]" a legal guardian within the definition of "victim"; therefore any loss incurred by the legal guardian of a minor as a result of an offense is subject to restitution. On this reading, if the victim's legal guardian became depressed upon learning of the offense and so had to attend counseling sessions, the cost of that counseling would be subject to restitution. On the other, narrower, reading, the provision permits restitution only of those costs incurred by a legal guardian acting in her capacity as legal guardian—in other words, costs she incurred on behalf of the minor. Thus, for example, a legal guardian who paid for her son's medical treatment would be entitled to restitution of *those* costs, but she could not expect to recover the income she lost when she took a day off work because she was too distraught by her son's victimization to show up at the office.

While common sense favors the latter reading, we need not, and do not, decide whether the statute is thus limited. On either of the two possible readings of § 2248(c), the mother's travel expenses may be subject to restitution.

**[9]** On the blunt reading, there is, unsurprisingly, little need for finesse: The mother is the legal guardian of the vic-

tim, and therefore she may recover her travel expenses so long as they were proximately caused by the offense.[7] If the narrower reading is the correct one, a more tortuous path must be followed, but it leads us to the same place: The mother maintains she made the trips to Flagstaff because the victim's behavioral health counselor ordered them as part of a treatment plan that, according to the affidavit of the victim's counselor, required "the minor crime victim [to have the] added emotional support of a loved family member to assist in the recovery process." The mother therefore traveled to Flagstaff in her capacity as a "loved family member." A "loved family member" is, of course, not the same thing as a "legal guardian." But if the mother had paid a different loved family member to make the trips (say, the victim's grandfather), she would be entitled to restitution: She would have made the payments on her daughter's behalf in her capacity as her daughter's legal guardian, much as if she had paid medical bills on her daughter's behalf in that capacity. The fact that the mother made the trips herself rather than paying another family member to make the trips should not disentitle her to restitution of the expenses associated with the trips.

**[10]** We therefore conclude that even if the mother *made the trips* in her capacity as a loved family member, she *incurred the costs* of the trips in her capacity as legal guardian —that is, she incurred them on behalf of her daughter. On the narrower reading, then, we end up in the same place as we did on the blunt one. We therefore need not select between them to conclude that the mother's travel expenses may have been "incurred by the victim" within the meaning of 18 U.S.C. § 2248(b)(3).

---

[7]As the parties have not raised the issue, we do not consider whether the expense of regularly traveling the 150-mile distance between the daughter's boarding school and the mother's residence was a sufficiently foreseeable result of Tsosie's crime to have been incurred as "a proximate result of the offense." 18 U.S.C. § 2248(b)(3).

## IV.  TSOSIE'S EVIDENTIARY AND PROCEDURAL
## CHALLENGES

Tsosie mounts an additional challenge to the restitution order: He asks us to vacate the order on the ground that it lacked an adequate evidentiary basis and that the District Court insufficiently explained its reasons in issuing the order. We agree, and so vacate the order and remand for the District Court to permit the introduction of additional evidence, to reassess in light of that evidence whether to award the requested restitution, and to explain its reasoning in making that assessment.

In issuing the restitution order, the District Court was obliged to comply with the procedures set forth in 18 U.S.C. § 3664. *See* 18 U.S.C. § 2248(b)(2). Section 3664(e) provides, in part, that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," and that the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." *Id*. § 3664(e). In *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917 (9th Cir. 2001), we read the burden language less than literally, explaining that "[s]o long as the district court orders defendants to pay restitution only after *someone* proves the amount by a preponderance of the evidence, there is no reason a non-party . . . can't carry the burden." *Id.* at 924 (emphasis in original).

We have understood § 3664 to impose a number of related obligations on a district court issuing a restitution award. For one, we have viewed § 3664 as "contemplat[ing] that the district court will set forth an explanation of its reasoning, supported by the record, when a dispute arises as to the proper amount of restitution." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008).

In addition, we have understood § 3664(e)'s mandate that "[a]ny dispute as to the proper amount or type of restitution

shall be resolved by the court by the preponderance of the evidence" as requiring that the evidence supporting a district court's restitution order meet a threshold level of adequacy. For that reason, in *Waknine*, we reversed a restitution order that was based only on "one-page loss summaries" provided by victims in affidavits, even though the defendant had not introduced evidence challenging the affidavits. *Id.* at 557. In so ruling, we explained that "the government [had] offered insufficient evidence to prove that it [was] more likely than not that the victims lost the amounts listed in . . . the[ ] summaries." *Id.* at 557; *see also id.* (explaining that "a district court may only utilize evidence that possesses sufficient indicia of reliability to support its probable accuracy" (quotation omitted))*; United States v. Andrews*, 600 F.3d 1167, 1172 (9th Cir. 2010) (holding that a restitution order violated 18 U.S.C. § 3664(e) because it was issued in exclusive reliance on the victim's evidence as to causation, and the defendant's expert witness was not allowed to testify). As these precedents make clear, § 3664(e)'s reference to a "preponderance of the evidence" requires that, when there is a dispute as to restitution, a restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant's offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded.

**[11]** In sum, 18 U.S.C. § 3664 requires both that a district court set forth its reasons in resolving a dispute over restitution and that a restitution award, if one issues, be adequately supported by evidence in the record. We conclude that the District Court's restitution order violated both these requirements.

**[12]** First, the parties disputed the proper amount of restitution, but the District Court set forth *no* explanation of its reasoning. At the sentencing hearing, Tsosie questioned whether "sufficient evidence has been provided" to order restitution of the travel expenses. He argued that many of the

trips listed on the spreadsheet may not have been made pursuant to the counselor's treatment plan or been otherwise caused by Tsosie's offense. After expressing these concerns, Tsosie requested a restitution hearing and that "further documentation be provided."

The District Court did not respond to any of these objections or requests. Instead, after asking to view the spreadsheet, the District Court stated only: "All right. I'll overrule the objections and grant the amount of restitution requested." That's it. In short, the District Court did nothing to explain its reasoning in deciding to award restitution or in calculating the size of the award.

True, the amount of restitution ordered corresponds precisely to the amount the victim's mother claimed on the spreadsheet for travel costs, so it is easy to reconstruct how the District Court arrived at that figure. Thus, there is some merit to the government's contention that it would be artificial to require the District Court expressly to state that it relied on the spreadsheet.

[13] But the spreadsheet alone is not enough to support the restitution award. As an initial matter, no sworn statement in the record supports the spreadsheet. Aside from the spreadsheet itself, the only pertinent evidence in the record is an unsworn letter from the victim's mother containing only the vague statement that she had "had to travel to Flagstaff to visit or bring home my daughter every weekend at the request of counselors and doctors," and the affidavit from the victim's mental health counselor, stating that she instructed the mother to visit her daughter on a weekly basis, but not reporting that the mother actually made the trips or indicating the distance of the trips or the mode of transportation used. The PSR offers no support either. To the contrary, it states that the probation office "was unable to determine [that the travel expenses were] directly related to the instant offense," and so recommended that they *not* be awarded.

In addition to being unsupported by any sworn affidavit, the spreadsheet contained a number of oddities that the District Court did not acknowledge. For one, almost all of the trips are listed as "RT" (presumably meaning "round trip"), but approximately half are listed as 300 miles and the other half are listed as 600 miles. The 600 mile trips are accompanied by the cryptic annotation "600 Miles RT (2)," and a note reading "Victim checked out to go home (Kaibeto) and go bac [sic] (Flagstaff)". One is likely supposed to understand that the mother made two round trips between Kaibeto and Flagstaff on the same day, but it is unclear why such double round trips would be part of the victim's treatment plan, let alone so frequent. Driving 600 miles on a single day would have allowed the victim hardly any time at home, and seems a strange way to provide the "emotional support" of a loved family member. Further, some of the driving expenses on the spreadsheet have nothing to do with the "treatment plan." Most of the expense entries are followed by an asterisk, indicating that the expense was incurred "Per Northern Arizona Healthcare Treatment Plan in conjunction with school psychologist." But a number of entries are not followed by the asterisk, including various trips to the hospital (quite possibly for the gallbladder treatment the victim underwent), as well as such items as "drove victim back to school" at the beginning of the school year. In addition, the entry for one trip states "Took Bus," yet the mileage for the trip is still calculated at the IRS rate for a private vehicle. Finally, the counselor's affidavit states that she instructed the mother to visit her daughter "each weekend," yet the spreadsheet includes some trips occurring within the same week as one another.

**[14]** Because it was not supported by any affidavit explaining how the trips and charges were part of the prescribed treatment plan, and because many of the expenses are difficult to interpret or seem inappropriate, the spreadsheet was an inadequate evidentiary basis to support the restitution award. The spreadsheet was "insufficient evidence to prove that it is more likely than not that the victim[ ] lost the amounts" for

which restitution was ordered as a proximate result of Tso-sie's offense. *Waknine*, 543 F.3d at 557. We also conclude that, especially in light of the spreadsheet's deficiencies, the District Court failed to "set forth an [adequate] explanation of its reasoning, supported by the record." *Id.* at 556. We temper our holding with the observation that, because district courts possess "a degree of flexibility in accounting for a victim's complete losses," *id.* at 557, a different question would be presented had the district judge acknowledged the spread-sheet's deficiencies and then set forth why he nonetheless thought the spreadsheet was an adequate evidentiary basis to support the restitution award.

## V.  CONCLUSION

[15] For the foregoing reasons, the restitution order is VACATED. We REMAND this case to allow the District Court to reassess whether Tsosie must pay restitution and, if so, the amount of such restitution. In doing so, it should con-sider Tsosie's objections to the restitution requested and per-mit him to enter contrary evidence, holding an evidentiary hearing if one proves necessary after documentary submis-sions. The District Court should also provide a statement of its reasoning in determining whether to order restitution and in calculating the amount of any restitution ordered.

VACATED and REMANDED.

---

BEA, Circuit Judge, concurring in part and dissenting in part:

I join Parts I through III of the majority opinion. This cir-cuit's case law requires that we hold Tsosie did not waive his right to appeal the restitution order because he was not aware of the restitution amount at the time he entered the plea agree-ment on the child molestation charges. *United States v. Gor-don*, 393 F.3d 1044, 1050 (9th Cir. 2004). Further, the

victim's mother in this case may receive restitution under 18 U.S.C. § 2248. In Part IV, however, the majority holds the district court erred in awarding restitution based on a detailed spreadsheet from the victim's mother to which the defendant never objected, save for a vague statement by defense counsel that "sufficient evidence ha[d] [not] been provided." To this holding, I respectfully dissent.

A district court's restitution order is reviewed for abuse of discretion. *Gordon*, 393 F.3d at 1051. As noted by the majority, the amount of restitution must be proven by a preponderance of the evidence. 18 U.S.C. § 3664(e). In this case, the only evidence presented as to the proper amount of restitution was a detailed, 11-page spreadsheet provided by the victim's mother and included as part of the Presentence Investigation Report ("PSR"). As conceded by counsel at oral argument in this court, Tsosie had received the spreadsheet at issue over a week before the sentencing hearing in the district court, yet filed no objection or contrary evidence. At the sentencing hearing, defense counsel confirmed he had reviewed the PSR. The district court judge asked whether defense counsel believed there were "[a]ny errors or objections in that report." Defense counsel responded: "No, Your Honor." At sentencing, upon the victim's mother's request for restitution, defense counsel stated:

> Your Honor, I don't believe the request is appropriate in this case. I certainly don't believe sufficient evidence has been provided. We have received a list of travel but I would imagine that there would be some visitation on behalf of the mother, at least I would like to believe that, and that the child, at least on occasion, would go home at least for holidays and other occasions.
>
> It was our understanding from reading the discovery that initially when these disclosures were made that there was very little travel at least on the vic-

tim's part to go home and she had spent the majority of the time at the school that she was living [sic].

Your Honor, if the Court's inclined to impose that amount of restitution, we would ask that a hearing be set and further documentation be provided.

This is not an objection to the spreadsheet's authentication, relevancy, foundation, or specificity. Instead, this is simply an "objection" to the *weight* of the evidence. Tsosie did not make an offer of proof as to what might be shown in an evidentiary hearing. Indeed, Tsosie provided the district court with no reason to doubt the veracity of the itemized spreadsheet provided by the victim's mother.

The majority hangs its hat on the fact that "the spreadsheet contained a number of oddities that the District Court did not acknowledge." Maj. Op. at 6217. As an initial matter, and most importantly, none of these purported oddities were ever raised in the district court as a reason for rejecting the victim's mother's spreadsheet. A district court can hardly be faulted for failing to acknowledge oddities which were mentioned for the first time on appeal. Second, the majority indulges in appellate fact-finding on a cold record. We have been told repeatedly that fact-finding is the trial court's province. *See, e.g.*, *Rice v. Collins*, 546 U.S. 333, 339-42 (2006); *Li v. Ashcroft*, 378 F.3d 959, 964 n.1 (9th Cir. 2004) ("My brother and I differ on what is the appropriate appellate function. He would retry. I am content to review.").

The majority points out that approximately half of the trips were 600 miles, and that the description implies that—on a single day—the mother picked her daughter up from school, drove her home, and then returned the daughter to her school. The majority contends that "[o]ne is likely supposed to understand that the mother made two round trips . . . on the same day," which is a "strange way to provide 'emotional support' of a loved family member." Maj. Op. at 6217. The simpler,

and more likely answer, however, is that on these weekends, the mother drove to the daughter's school in Flagstaff and brought the victim home to Kaibeto at the beginning of the weekend, and then drove the daughter back to school at the end of the weekend, but made only one entry in the spreadsheet. This conduct is entirely consistent with the treatment plan's terms, which "ordered that the minor's mother to [sic] travel to her daughter's dorm, pick up her daughter or visit her daughter at the dorm each weekend." The district court could have so found without being "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc), *cert. denied*, ___ S.Ct. ___, 2011 WL 1457546 (Apr 18, 2011).

The majority next notes that several of the entries should not have been included as part of the restitution award, specifically: (1) several entries which were not followed by an asterisk indicating that the expense was incurred as part of the treatment plan; (2) one entry which states the victim took a bus, yet the trip mileage was calculated at the IRS rate for a private vehicle; and (3) some trips that occurred more than weekly—the frequency for which the treatment plan called. Maj. Op. at 6217. The majority overemphasizes the effect of these discrepancies. The spreadsheet as a whole contained 139 entries covering 62,420 miles. These "problem" entries accounted for only 19 entries and 6,620 miles. It is no wonder the district court did not recognize these "oddities" when presented with a spreadsheet to which no party objected, considering Tsosie did not even mention them until his appeal to this court.

The spreadsheet provided by the victim's mother was highly detailed, recounting trips to visit her daughter over the course of five years. One would expect a few inaccuracies or confusing entries. Tsosie failed to object to the spreadsheet prior to sentencing, objected at sentencing only to the spreadsheet's weight, presented no countervailing evidence to cast

doubt on the veracity of the spreadsheet, and pointed out none of the "oddities" now recognized on appeal. *Cf. United States v. Andrews*, 600 F.3d 1167, 1172 (9th Cir. 2010) (holding the district court abused its discretion in ordering restitution when it *rejected* contrary evidence provided by the defendant). Given this, the district court did not abuse its discretion in concluding the spreadsheet "possesse[d] sufficient indicia of reliability to support its probable accuracy" and was adequate to establish the victim's mother's loss by a preponderance of the evidence. *United States v. Waknine*, 543 F.3d 546, 556-57 (9th Cir. 2008) (internal quotation marks omitted). I would affirm the district court's restitution order, and therefore I dissent.