FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

OCT 24 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SOHIEL OMAR KABIR,

Defendant-Appellant.

No. 21-50141

D.C. Nos.
5:12-cr-00092-VAP-1
5:12-cr-00092-VAP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted September 2, 2022
Pasadena, California

BEFORE:  MILAN D. SMITH, JR. and RYAN D. NELSON, CIRCUIT JUDGES,
and GERSHWIN A. DRAIN,* DISTRICT JUDGE.

Opinion by Judge Milan D. Smith, Jr.

---

*   The Honorable Gershwin A. Drain, United States District Judge for
the Eastern District of Michigan, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel affirmed a sentence imposed on Sohiel Omar Kabir at resentencing on remand in a case in which Kabir was convicted on terrorism-related charges for his central role in a conspiracy to travel to Afghanistan and engage in armed conflict against American soldiers.

The panel held that the district court not clearly err in finding that Kabir qualified as an "organizer" or "leader" of the criminal conspiracy under USSG § 3B1.1(c). The panel wrote that the district court reasonably concluded that Kabir had the necessary influence and ability to coordinate the behavior of others so as to achieve a desired criminal result, meaning that he was an "organizer" within the meaning of § 3B1.1(c); and that Kabir's recruitment efforts are indicative of his playing a leadership or central organizational role in the conspiracy.

The panel held that the district court did not plainly (or otherwise) err when it rejected his policy challenges to a terrorism enhancement under USSG § 3A1.4. The panel wrote that it is clear that the district court considered Kabir's arguments and simply found them unpersuasive.

The panel held that any error in the district court's finding that Kabir had not expressed remorse does not rise to the level of plain error, and that even if the district court erred, Kabir's substantial rights were not violated.

The panel held that Kabir's argument that the district court failed to adequately consider the difference in circumstances between Kabir's original sentencing and resentencing relies on mischaracterizations of the record; and that any error in this regard was not plain, did not affect Kabir's substantial rights, and did not malign the integrity of judicial proceedings.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

Margaret A. Farrand (argued), Assistant Federal Public Defender; Gia Kim, Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

Reema M. El-Amamy (argued), Assistant United States Attorney, Terrorism and Export Crimes Section; Bram M. Alden, Chief of Criminal Appeals Section and Assistant United States Attorney; Tracy L. Wilkinson, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

M. SMITH, Circuit Judge:

Defendant Sohiel Omar Kabir was convicted on terrorism-related charges for his central role in a conspiracy to travel to Afghanistan and engage in armed conflict against American soldiers. He was originally sentenced to 300 months in prison, but had to be resentenced after we reversed two of his convictions. The district court resentenced him, again imposing a 300-month sentence. Kabir challenges this resentencing. He first contends that the district court erred in applying an enhancement to his sentence after finding that he was an "organizer" or "leader" of the criminal conspiracy pursuant to the United States Sentencing Guidelines, U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2004) (Guidelines, or USSG). Kabir also argues that the district court's decision to impose an additional terrorism enhancement under the Guidelines was inadequately justified, and that the district court committed other procedural errors in weighing the statutory sentencing factors. We have jurisdiction pursuant to 18 U.S.C. § 3742(a), and we affirm.

## LEGAL BACKGROUND

When sentencing a criminal defendant, a district court must consider a number of statutory factors set forth in 18 U.S.C § 3553(a), including the Guidelines. *See* 18 U.S.C § 3553(a)(4); *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The Guidelines provide a framework for sentencing decisions "based on the seriousness

2

of a defendant's offense and his criminal history." *Hughes v. United States*, 138 S. Ct. 1765, 1772 (2018)*; see generally* USSG §1B1.1 (explaining how terms of imprisonment and other criminal punishments are determined under the Guidelines). "[T]he Guidelines are advisory only. But a district court still must consult those Guidelines and take them into account when sentencing." *Hughes*, 138 S. Ct. at 1765 (cleaned up).

The Guidelines require the district court to calculate (1) a numerical "offense level" for the defendant that is higher or lower based on various aggravating or mitigating aspects of the crime the defendant has committed; and (2) a "criminal history category," which is usually based primarily on the nature and number of the defendant's past criminal convictions. A higher offense level or a higher criminal history category translates into a more severe recommended sentence. *See* USSG ch. 5, pt. A (sentencing table).

The parties dispute the proper application of two Guidelines provisions to the facts of this case. First, USSG § 3B1.1(c) provides that a defendant's offense level will be adjusted two levels upward if he "was an organizer, leader, manager, or supervisor" in a non-extensive criminal activity involving fewer than five participants. *Compare* USSG § 3B1.1(a)-(b) (providing greater increases for criminal activities involving "five or more participants" or that were "otherwise extensive"). Second, USSG § 3.A1.4—which the parties refer to as a "terrorism

enhancement"—provides for an upward adjustment of twelve levels if the offense committed was "a felony that involved, or was intended to promote, a federal crime of terrorism." If the defendant has committed such an offense, this same Guidelines provision automatically places him in criminal history category VI, which is the highest criminal history category that the Guidelines allow. USSG § 3.A1.4(b).

## FACTUAL BACKGROUND

Defendant is a naturalized U.S. citizen who was born in Kabul, Afghanistan. He served in the U.S. Air Force between 2000 and 2001. The government claims that from August 2010 through November 2012, Kabir and three others—Ralph Kenneth DeLeon, Miguel Alejandro Vidriales Santana, and Arifeen David Gojali "conspired to provide material support and resources . . . to terrorists, including members of the Taliban and Al-Qa'ida, in order to engage in violent jihad against, and to kill, American soldiers and personnel in Afghanistan and elsewhere." Specifically, Kabir is alleged to have indoctrinated DeLeon and Santana with a militant Islamist[1] ideology through social media and other online content promoting radical views. He later travelled to Afghanistan via Germany, from where he

---

[1] This term—as opposed to terms such as "Islamic" or "Muslim" that refer generally to Islam as a religion—indicates a connection with a radical political ideology based on fundamentalist forms of Islam. *See, e.g.*, *Islamist*, dictionary.com/browse/islamist.

4

continued to discuss violent jihad with DeLeon and Santana. In these communications, Kabir indicated that he had made connections with the Taliban and al-Qaida, and that he intended for all three men to join these groups.

In February 2012, the FBI sent a confidential source (CS) to meet with DeLeon and Santana. The CS learned of their plans to join Kabir in Afghanistan, as well as potential U.S. military sites that they were considering attacking. Santana and DeLeon made clear in their communications with the CS that based on their Islamist beliefs they intended to kill American and allied soldiers stationed overseas.

In September 2012, DeLeon recruited Gojali to the conspiracy. The CS recorded conversations with DeLeon, Santana, and Gojali in which the three men discussed their plans, including a conversation in which "DeLeon bragged about having recruited" four additional individuals. Kabir advised his compatriots of travel plans he had made for them, indicated that he had made arrangements for them to join al-Qaida and the Taliban, and urged them "to train and prepare for jihad." Along these lines, DeLeon, Santana, and Gojali took several steps to prepare for their intended travel to Afghanistan, including physical exercise, paintball, and firearms practice with M16- and AK-47-style assault rifles and other weapons at shooting ranges in Los Angeles. In addition, DeLeon, Santana, and Gojali obtained valid passports permitting them to travel to Afghanistan.

In November 2012, Kabir told the other men that "he was leaving on a one-way mission," implying later in the conversation that this "mission" might involve C4 explosives. At this point, the other men made concrete plans to join Kabir in Afghanistan, purchasing airline tickets and concocting a cover story that involved travelling through Mexico and Turkey. The FBI arrested DeLeon, Santana, and Gojali as they were driving to Mexico. Around the same time, U.S. military personnel captured Kabir in Afghanistan and turned him over to the FBI.

## PROCEDURAL HISTORY

### I. Kabir's Convictions and Original Appeal

Kabir and DeLeon were each eventually charged with five terrorism-related offenses, namely (1) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A; (2) conspiracy to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B; (3) conspiracy to kill, kidnap, and maim persons in a foreign country in violation of 18 U.S.C. §§ 956(a)(1), (A)(2)(A), & (a)(2)(B); (4) conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371; and (5) conspiracy to commit murder in violation of 18 U.S.C. § 1117. The case proceeded to a 26-day jury trial. The jury found Kabir guilty on all counts other than count 3 (conspiracy to kill, kidnap, and maim).[2] The district court later sentenced Kabir to an imprisonment term of

---

[2] DeLeon was found guilty on counts 1, 3, and 5.

6

300 months (25 years).

On appeal, we reversed Kabir's convictions on counts 2 and 4 (conspiracy to provide material support to a terrorist organization and conspiracy to commit an offense against the United States), remanding with instructions to enter a judgment of acquittal on these counts. *United States v. Kabir*, 828 F. App'x 396, 401 (9th Cir. 2020) (mem.) (affirming Kabir's other convictions). On remand, the district court set a resentencing hearing for Kabir. Kabir's resentencing is the focus of the present appeal.

## II. Kabir's Resentencing and this Appeal

Before the resentencing hearing, the United States Probation Office prepared a new Presentence Report that recommended imposing a 420-month custodial sentence (35 years), followed by a lifetime of supervised release with several conditions. This recommendation was based in part on the Probation Office's determination that, under the Guidelines, Kabir's offense level was 43 and his criminal history category was VI (the highest category).[3] These determinations, in

---

[3] The Probation Office considered Kabir's offenses together because they involved the same conduct. *See* USSG § 3D1.2(b). Kabir was assigned a base offense level of 33 pursuant to two Guidelines provisions governing conspiracy to commit murder and aiding and abetting. *See* USSG §§ 2A1.5, 2X2.1. These aspects of the sentence level calculation are undisputed. It is also undisputed that, following the ordinary Guidelines method of calculating Kabir's criminal history category based on his past criminal behavior, Kabir would have been placed in criminal history category V. The recommended sentence for an offender with an offense level of

turn, resulted from: (1) a 2-point increase in Kabir's offense level based on the Probation Office's determination that he "was an organizer, leader, manager, or supervisor" in the terrorist conspiracy, USSG § 3B1.1(c); and (2) a 12-point increase in his offense level based on the conclusion that Kabir had committed "a felony that involved, or was intended to promote, a federal crime of terrorism," USSG § 3A1.4(a).[4]

At the resentencing hearing, the district court used the Guidelines as its "starting point" and calculated a Guidelines-recommended sentence of life in prison. It agreed that Kabir "was the organizer and leader" of the terrorist conspiracy, and rejected his policy arguments against applying the Guidelines' terrorism enhancements.

The district court also considered several factors outside the Guidelines, such as whether Kabir had shown remorse for his crimes. Kabir submitted a letter ahead of the resentencing hearing in which he discussed overcoming substance addiction while in prison, disputed claims by the government that he was still involved in

---

33 and a criminal history category of V is between 210 and 262 months in prison. USSG ch. 5, pt. A. But as explained *infra*, the PSR included a 14-point increase from two sentencing enhancements. This resulted in Kabir's receiving an offense level calculation of 47, but the Guidelines provide for a maximum offense level of 43. *See* USSG ch. 5, pt. A, note 2 ("An offense level of more than 43 is to be treated as an offense level of 43.").

[4] The latter terrorism enhancement also resulted in Kabir's criminal history category being increased from V to VI. *See* USSG § 3A1.4(b).

Islamist activities and claimed that he was "not the same person" as he was before going to prison. Kabir also made a statement on his own behalf at the resentencing hearing that covered substantially similar ground. During its sentencing pronouncement, the district court discussed these statements and found that they "are fairly characterized as not expressing remorse. In fact, the statement [Kabir made in court] today blaming his drug abuse, his bad friends, his bad choices, that he's misunderstood, nowhere is there a statement of remorse for his conduct."

Ultimately, the district court again imposed a prison sentence of 300 months plus a lifetime of supervised release. Kabir timely appealed his sentence. On appeal, he challenges the district court's Guidelines calculations, as well as: its application of the Guidelines' terrorism-related provisions; its finding that Kabir had not expressed remorse; and its alleged failure to consider a change in circumstances between the original sentencing and resentencing.

## ANALYSIS

### I. Whether Kabir was an "Organizer" or "Leader" in the Conspiracy

Kabir first challenges the district court's finding that he qualified as an "organizer" or "leader" of a criminal venture pursuant to the Guidelines. USSG § 3B1.1(c). We review the district court's factual findings for clear error, and its

9

application of the Guidelines to those facts for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

To qualify as an "organizer" or "leader," a defendant "must have exercised 'control over others.'" *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021) (quoting *United States v. Avila*, 95 F.3d 887, 892 (9th Cir. 1996)). "Control" requires more than mere "facilitation," and even a finding that the defendant "play[ed] a central role" in the offense is insufficient. *Id.* at 1236. However, the defendant need only have "some control" over his subordinate's actions, which includes organizational responsibility. *United States v. Smith*, 719 F.3d 1120, 1126 (9th Cir. 2013) (quoting *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012)). The Commentary to USSG § 3B1.1 further explains that facts which may be indicative of "leader" status include

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1(c) cmt. 4. Here, the district court reasonably concluded that Kabir had "the necessary influence and ability to coordinate the behavior of others so as to achieve [a] desired criminal result," meaning that he was an "organizer" within the meaning of USSG § 3B1.1(c). *United States v. Doe*, 778 F.3d 814, 826 (9th Cir. 2015). The district court found that Kabir told his co-conspirators "what to pack,

10

how to pack, how to train, what guns to use when practicing, [and] what sorts of physical training to undertake."

Though Kabir attempts to characterize these directives as nothing more than suggestions, the record shows that his co-conspirators did what Kabir told them to do. For example, Kabir instructed his co-conspirators to "train and prepare for jihad," and to "come on down" to Afghanistan. Following this directive, the co-conspirators proceeded to, *inter alia*: train with assault rifles on firing ranges; practice their skills with paintball activities; and obtain passports to travel to Afghanistan. Deleon even withdrew from college, obtained a refund of his tuition money, and sold his car in order to raise money for travel.

Kabir also arranged for his co-defendants to join the Taliban or al-Qaida[5] in Afghanistan. Specifically, Kabir advised them of routes to travel to Kabul and arranged an apartment for the group to use when they arrived in Afghanistan. He reassured them that all of the arrangements for their arrival were taken care of, telling them, "everything's set up for you guys out here. Now you just gotta come." Kabir even told his co-conspirators that he already informed "the brothers" (members of Taliban/al-Qaida) about "you guys coming though."

---

[5] Our previous decision in this case held that the evidence indicated "Kabir was open to joining either organization," and that Kabir left it to the group to decide which organization they preferred. *Kabir*, 828 F. App'x at 399. Though both options were discussed, the group's plans to join the Taliban were more concrete than any plans to join al-Qaida. *See id.*

11

Finally, Kabir's recruitment efforts are indicative of his playing a leadership or central organizational role in the conspiracy. *See* USSG § 3B1.1(c) cmt. 4 (stating that courts should consider a defendant's "recruitment of accomplices," in imposing enhancement). Kabir not only recruited Deleon and Santana, but approved Goljai's membership in the group when Deleon apparently felt the need to consult with him about the fact.

The district court's finding that these facts in the aggregate proved that Kabir was a "leader" or "organizer" has ample support in the record.

Kabir relies heavily on *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021), to argue that the actions noted amounted only to facilitation, not leadership or organization. *Harris*, however, is readily distinguishable. The defendant in *Harris* pleaded guilty to abusing the daughter of his girlfriend, in which abuse the latter also participated. 999 F.3d at 1235. The government argued that the defendant influenced or controlled his girlfriend's actions because the girlfriend photographed the abuse and, with the defendant's help, made lists of people the couple wanted to have sex with (including the daughter). *See id.* at 1235-36. We held that USSG § 3B1.1(c) did not apply because there was no evidence that the defendant "directed" his girlfriend to take the photographs or make the lists, and because "[m]aking a list is most analogous to making a suggestion." *Id.* at 1236.

The facts here are easily distinguishable from those in *Harris*. Most importantly, because only two people were involved in the crime, we expressly refused to consider whether the defendant had "organizational authority," *id.* at 1235 n.1, focusing exclusively on whether the defendant had a "leadership" role, *id.* at 1236. That alone is enough to distinguish *Harris* in light of Kabir's significant organizational role. Moreover, Kabir did far more than help the defendants make lists; he instructed them in all aspects of their conspiracy to commit terrorist acts abroad, and he made concrete arrangements for them to travel to Afghanistan to fight against American soldiers.

Our opinion in *United States v. Doe* presents a closer analogy. The defendant in *Doe* was sentenced for his involvement in an illegal drug trafficking conspiracy. 778 F.3d at 817–21. We upheld the district court's finding that the defendant was an "organizer" pursuant to USSG § 3B1.1(c) because of his "efforts to coordinate the procurement and the distribution of drugs from numerous suppliers, and his role in coordinating the activities of the other participants to the extent necessary to complete the transaction." *Id.* at 826 (citation and internal quotation marks omitted). We discussed specific transactions in which the defendant "put the deal together by negotiating the type, quantity, and price of drugs for each transaction, and then ensured the drugs, money, and participants arrived when and where needed." *Id.* (calling the defendant "the driving force behind the success" of these transactions).

13

Kabir was similarly "the driving force" behind his group's efforts, coordinating the group's training and travel plans as well as providing ideological guidance.

We conclude that the district court did not err in finding that Kabir was a leader or organizer within the meaning of USSG § 3B1.1(c).

## II.  Kabir's Remaining Claims of Procedural Error

Kabir also raises three claims of procedural error, arguing that the district court erred (1) in its application of the Guidelines' terrorism-related provisions; (2) in finding that Kabir had not expressed remorse; and (3) in not adequately considering the difference in circumstances between Kabir's original sentencing and resentencing.  The parties agree that the plain error standard applies, because Kabir did not raise his procedural objections before the district court.[6]  *See United States v. Waknine*, 543 F.3d 546, 551 (9th Cir. 2008).  "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights.  If these three conditions are met, we may then exercise our discretion to grant relief if [(4)] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (cleaned up).

---

[6] Although Kabir applies the plain error standard throughout his brief, it is possible that the harmless error standard actually applies to his arguments concerning application of the terrorism enhancement because Kabir did contest its applicability before the district court.  We are, however, bound by the parties' framing of the issues.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).  Moreover, as discussed *infra*, it is immaterial whether the harmless error or plain standard applies to Kabir's argument on this point because he has failed to demonstrate any error at all.

## A. The Terrorism Enhancement

Kabir contends that the district court erred when it rejected his policy challenges to USSG § 3.A1.4's "terrorism enhancement." "A district court may vary from the Guidelines if it disagrees with them on policy grounds and the Sentencing Commission fails to exercise its characteristic institutional role in their development. There is, however, no *obligation* for a district court to do so." *United States v. Carper*, 659 F.3d 923, 925 (9th Cir. 2011) (cleaned up) (emphasis added); *see also Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (stating that a district judge may disagree with a Guideline on policy grounds); *United States v. Mitchell*, 624 F.3d 1023, 1030 (9th Cir. 2010) ("No judge is *required* to sentence at a variance with a Guideline, but every judge is at liberty to do so." (quoting *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)). All that is required of a district court faced with policy arguments is an indication that it understood its authority to vary from the Guidelines on these grounds before deciding not to do so. *See United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011); *see, e.g., United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010) (affirming sentence where "the district court was aware of its discretion to vary based on disagreement[s] with the Guidelines," but chose not to do so).

Kabir concedes that the district court "recognized its discretion to vary based on a policy disagreement," but contends that the district court failed to consider the

specific arguments he made or adequately explain its reasons for rejecting them. Kabir misreads the record. At the outset of the resentencing hearing, the district court indicated that it had considered the policy arguments made in Kabir's sentencing memorandum, and then tentatively declined to accept them. In doing so, it expressly disagreed with Kabir's arguments that the terrorism enhancement effectively creates "a separate offense" or "a mandatory minimum" sentence. The district court then heard policy arguments for and against applying the terrorism enhancement, interjecting at times to ask questions or comment on the strength of Kabir's arguments. After considering these arguments, the district court declined to withdraw the terrorism enhancement, though it still imposed a below-Guidelines sentence of 300 months in prison.

Considering these aspects of the record together, it is clear that the district court considered Kabir's arguments carefully and simply found them unpersuasive. Under these circumstances, the district court was not required to provide a more extensive explanation of its choice to adhere to the Guidelines. *See, e.g.*, *United States v. Daniels*, 541 F.3d 915, 922 (9th Cir. 2008) ("No lengthy explanation" of a sentencing decision that follows the Guidelines "is necessary if the record makes clear that the sentencing judge considered the evidence and arguments." (cleaned up)); *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1053–54 (9th Cir. 2009) ("[A] sentencing judge does not abuse his discretion when he listens to the

defendant's arguments and then simply finds the circumstances insufficient to warrant a sentence lower than the Guidelines range." (cleaned up)); *Pape*, 601 F.3d at 748–49 (holding that it was sufficient that the district court considered and then "implicitly declined" to adopt defendant's policy disagreements with the Guidelines). Moreover, the fact that the district court still imposed a below-Guidelines sentence is suggestive of its reasonableness. *See United States v. Montoya*, 48 F.4th 1028, 1038 (9th Cir. 2022) ("[A] below-Guidelines sentence will usually be reasonable") (citing *United States v. Bendtzen*, 542 F.3d 722, 728 (9th Cir. 2008)). Consequently, the district court did not plainly (or otherwise) err on this issue.

## B. Expression of Remorse

Next, Kabir argues that the district court erred in its finding that he had not expressed remorse. A review of the record, however, shows that whether Kabir's statements amounted to remorse is debatable. On one hand, Kabir did express "regret" and "sorrow" for the consequences of his actions on his family (though not his co-conspirators or potential victims) in his sentencing letter. He also concluded his allocution by saying "to everybody involved directly and indirectly" in his crimes—a group that presumably included his co-conspirators—that "I apologize from the bottom of my heart." On the other hand, the district court's explanation for its finding—that Kabir's statements "blam[ed] his drug use, his bad friends, his bad

choices, [and the feeling that] he's misunderstood" for his actions—is well-supported by the record. As a result, any error on the part of the district court does not rise to the level of plain error. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 135 (2009) (an error is not plain if it is "subject to reasonable dispute").[7]

Moreover, even if the district court erred, Kabir's substantial rights were not violated. To make such a showing, Kabir was required to demonstrate "a reasonable probability that he would have received a different sentence if the district court had not erred." *United States v. Joseph*, 716 F.3d 1273, 1280 (9th Cir. 2013) (cleaned up). Here, the district court explicitly discussed Kabir's arguments that he had deserted the path of religious extremism and found them unpersuasive. For example, the court cited evidence that Kabir had "sought out other prisoners convicted of serious terrorism charges." The court also noted that Kabir already had access to

---

[7] Regardless, even if it was technically incorrect to say that Kabir's statements were not "fairly characterized" as expressing any remorse, such an error did not affect "the fairness, integrity, or public reputation of judicial proceedings." *Waknine*, 543 F.3d at 551. Again, while Kabir said many times at his resentencing hearing that he had made a "mistake" and was now reformed, these statements were all made in the context of blaming his background for his actions. Apart from the generalized, one-sentence apology quoted above, nowhere did Kabir say anything resembling a feeling of regret for planning to kill American soldiers or upending the lives of his compatriots by recruiting them into a terrorist conspiracy. Even assuming the district court misused the term "remorse" (as opposed to a similar term like "responsibility") the thrust of its comment—that Kabir had failed to take full responsibility for his actions and express a sincere form of regret—is supported by the record.

18

social services and a stable family background before he committed his crimes. *See* 18 U.S.C. § 3553(a) (requiring consideration of a defendant's "history and characteristics"). Ultimately, the district court found other statutory sentencing factors, such as deterrence and the seriousness of the offense, to be more important in this case. *See* 18 U.S.C. § 3553(a) (sentencing factors). There is no indication that the district court's sentencing calculus would meaningfully change if it had not stated that Kabir did not express remorse. Therefore, reversal is not warranted on this issue.

## C. Changed Circumstances

Finally, Kabir argues that the district court failed to adequately consider the difference in circumstances between Kabir's original sentencing and resentencing. Kabir's argument once again relies on a mischaracterization of the record. It is apparent that the district court *did* take into account developments since its original sentence. In discussing Kabir's "history and characteristics," 18 U.S.C. § 3553(a)(1), for example, the district court discussed Kabir's completion of educational programs in prison, Kabir's future goals, Kabir's purported efforts to be kind to other prisoners, and the government's allegations that Kabir was still involved in extremist activities while incarcerated. As previously discussed, the district court also engaged substantively with Kabir's claims of rehabilitation and found them lacking in persuasive force. That the court began its discussion by

19

"incorporat[ing] into the record the statements that were made at the first sentencing in this case as to the nature and circumstances of the offense," is unsurprising and immaterial, as a number of the relevant sentencing factors were unchanged between Kabir's first and second sentencings.[8]

More importantly, Kabir fails to present an error that was "clear or obvious," affected his "substantial rights," or implicated "the fairness [and] integrity of judicial proceedings." *Puckett*, 556 U.S. at 135. Kabir contends that our prior reversal of his convictions for conspiring to join al-Qaida fundamentally altered the relevant sentencing considerations. But all this means is that there was legally insufficient evidence that Kabir and his group had conspired to join al-Qaida specifically, as opposed to the Taliban. *See Kabir*, 828 F. App'x at 398-99. At sentencing, the district court's substantive focus was on Kabir's plan to "engage in violent jihad against and to kill American soldiers and personnel in Afghanistan and elsewhere," not his specific group affiliation.[9] As a result, any error in this regard was not plain,

---

[8] These include factors such as "the nature and circumstances of the offense," "the seriousness of the offense," the need to "afford adequate deterrence to criminal conduct," and the relevant Guidelines provisions. 18 U.S.C. § 3553(a).

[9] Though the district court mentioned the group's plans to join both "the Taliban and al-Qaeda," Kabir provides no explanation as to why he might have received a more lenient sentence had the district court concluded (for example) that he intended to kill American soldiers only while flying the Taliban's flag, rather than al-Qaida's. Though Kabir notes that only al-Qaida was designated by the State Department as a foreign terrorist organization at relevant times, the district court

---

did not affect Kabir's substantial rights, and did not malign the integrity of judicial proceedings.

Consequently, Kabir has failed to demonstrate a plain error warranting reversal with respect to his remaining claims of procedural error.

**AFFIRMED.**

---

did not mention Kabir's affiliation with such an organization as an aggravating factor when imposing its below-Guidelines sentence. More importantly, while there are important differences between them, the fact remains that both groups were engaged in a violent conflict with the United States when Kabir left for Afghanistan. In fact, we reversed Kabir's al-Qaida-specific convictions in part because he seemed ambivalent as to which organization would better further his plans to attack U.S. military personnel. *See Kabir*, 828 F. App'x at 398-99.